Opinions of the Colorado Supreme Court are available to the
public and can be accessed through the Judicial Branch's homepage at
http://www.courts.state.co.us. Opinions are also posted on the
Colorado Bar Association's homepage at http://www.cobar.org.

ADVANCE SHEET HEADNOTE
April 30, 2018

## 2018 CO 32

**No. 15SC326, People v. Rediger—Public Employee—Invited Error—Waiver—Constructive Amendment—Plain Error Review**

This case requires the supreme court to decide two questions: (1) whether the owner-director of a nonprofit school regulated by various governmental entities is a "public employee" within the meaning of section 18-9-110(1), C.R.S. (2017), and (2) whether the respondent waived or invited error with respect to a constructive amendment claim when his defense counsel stated that he was "satisfied" with the proposed jury instructions, notwithstanding the fact that the elemental instruction on the charge of interference with the staff, faculty, or students of an educational institution tracked section 18-9-109(1)(b), C.R.S. (2017), rather than section 18-9-109(2), C.R.S. (2017), which was the subsection charged in the information.

As to the first question, the court concludes that "public employee" means an employee of a governmental entity and that therefore an employee of a nonprofit school is not a public employee. Accordingly, the court agrees with the court of appeals division's decision that the respondent's conviction for interference with a public employee in a public building cannot stand.

As to the second question, the court concludes that the respondent neither waived nor invited error with respect to his constructive amendment claim because the record does not indicate that he or his counsel either intentionally relinquished a known right or deliberately injected the erroneous jury instruction as a matter of trial strategy. The court instead construes the respondent's general acquiescence to the instructions as a forfeiture and, reviewing for plain error, concludes that the constructive amendment of the respondent's charging document constituted plain error necessitating a new trial.

Accordingly, the supreme court affirms in part and reverses in part the court of appeals division's judgment.

# The Supreme Court of the State of Colorado

2 East 14th Avenue • Denver, Colorado 80203

## 2018 CO 32

### Supreme Court Case No. 15SC326
*Certiorari to the Colorado Court of Appeals*
Court of Appeals Case No. 12CA1386

### Petitioner/Cross-Respondent:

The People of the State of Colorado,

v.

### Respondent/Cross-Petitioner:

David Delbert Rediger.

### Judgment Affirmed in Part and Reversed in Part
*en banc*
April 30, 2018

**Attorneys for Petitioner/Cross-Respondent:**
Cynthia H. Coffman, Attorney General
Brock J. Swanson, Assistant Attorney General
  *Denver, Colorado*

**Attorneys for Respondent/Cross-Petitioner:**
Douglas K. Wilson, Colorado State Public Defender
Shann Jeffrey, Deputy State Public Defender
  *Denver, Colorado*

**JUSTICE GABRIEL** delivered the Opinion of the Court.

¶1    We granted the People's petition and David Delbert Rediger's cross-petition for certiorari from the court of appeals division's decision affirming in part and reversing in part Rediger's convictions for (1) interference with a public employee in a public building under section 18-9-110(1), C.R.S. (2017), and (2) interference with the staff, faculty, or students of an educational institution under section 18-9-109(2), C.R.S. (2017). People v. Rediger, 2015 COA 26, 411 P.3d 907.[1]

¶2    With regard to the first conviction, this case requires us to decide whether the owner-director of a nonprofit school regulated by various governmental entities is a "public employee" within the meaning of section 18-9-110(1). The division unanimously concluded that "public employee" means an employee of a public entity and that therefore an employee of a nonprofit school is not a public employee. Id. at ¶ 30, 411 P.3d at 912. Based on the plain meaning of the phrase "public employee," we agree.

---

[1] Specifically, we granted certiorari to review the following issues:

1. Whether people providing public services on behalf of a public entity are public employees under section 18-9-110, C.R.S. (2015).

2. Whether the jury verdict for interference with the staff, faculty, or students of an educational institution under section 18-9-109, C.R.S. (2015), resulted from an impermissible constructive amendment constituting reversible error.

3. Whether the court of appeals erred in applying the waiver doctrine as a complete bar to appellate review of the constructive amendment in this case, where defense counsel stated that he was generally "satisfied" with the jury instructions, but where there was no evidence that defense counsel was aware that the prosecutor erroneously tendered an uncharged offense in its proposed jury instructions.

¶3 With regard to the second conviction, this case concerns the scope of two procedural bars to appellate review: invited error and waiver. As to this issue, a majority of the division concluded that Rediger had waived his right to challenge the constructive amendment of his criminal information when his defense counsel stated that he was "satisfied" with the proposed jury instructions. Id. at ¶ 64, 411 P.3d at 918. In our view, however, mere acquiescence to a jury instruction does not constitute a waiver without some record evidence that the defendant intentionally relinquished a known right. We likewise disagree with the People's contention that Rediger's alleged acquiescence to the erroneous instructions tendered by the People constitutes invited error. Rather, this purported acquiescence, at most, constitutes a forfeiture, and our review is for plain error. Applying that standard here, we conclude that the discrepancy between the charging document and the jury instructions in this case effected a constructive amendment of the charging document, and on the record presented, this error was plain and requires reversal.

¶4 For these reasons, we affirm the portion of the division's judgment dismissing with prejudice Rediger's conviction under section 18-9-110(1). We reverse, however, the portion of the judgment upholding Rediger's conviction and sentence under section 18-9-109(2), and we remand that count for a new trial.

## I. Facts and Procedural History

¶5 David Rediger drove to the Rocky Mountain Youth Academy (the "Academy")—a nonprofit day treatment school that serves students who are not succeeding in public school—to speak with Stacey Holland, the Academy's owner and director. Holland and

3

her husband had accused Rediger of stealing hay from their property, and Rediger intended to speak with Holland about the theft charges against him.

¶6 Holland and Rediger gave conflicting accounts of the ensuing encounter. Holland said that Rediger pulled into the Academy parking lot at about 10:30 in the morning, demanded to talk right then in order to settle things, refused to leave despite Holland's repeated requests, and followed her into the Academy's classroom, where he had another confrontation with her, stating that if he did not immediately get the matter settled, then he would tell the sheriff's department that her husband had stolen a diesel truck. Holland characterized Rediger's behavior as "very aggressive" and said that she "was very scared" and "felt really threatened" by Rediger's conduct. Rediger conceded that he did not initially leave when asked to do so, but he said that he never stepped inside the school building and that he "was trying not to make a scene at the school."

¶7 Based on this incident, the People charged Rediger with intimidating a witness or victim under section 18-8-704, C.R.S. (2017), interference with a public employee in a public building under section 18-9-110(1), and interference with staff, faculty, or students of an educational institution under section 18-9-109(2). As to the last of these charges, the criminal information alleged:

> On or about December 4, 2008, David Delbert Rediger, on the premises of an educational institution or at or in any building or other facility being used by an educational institution, unlawfully and willfully impeded the staff or faculty of the institution in the lawful performance of their duties or impeded a student of the institution in the lawful pursuit of his or her educational activities through the use of restraint, abduction, coercion, or intimidation or when force and violence were present or threatened; in violation of section C.R.S. 18-9-109(2).

4

¶8 The case proceeded, and after a pretrial conference, the prosecutor tendered a set of proposed jury instructions for defense counsel to review. Notably, these proposed instructions included an elemental instruction tracking section 18-9-109(1)(b), rather than section 18-9-109(2), which was the subsection charged in the information. That instruction provided, in pertinent part:

> The elements of the crime of Interference with Staff, Faculty, or Students of an Educational Institution are:
>
> 1. That the defendant,
>
> 2. in the County of Conejos, State of Colorado, on or about December 4, 2008
>
> 3. was on or near the premises or facilities of any educational institution, and
>
> 4. knowingly,
>
> 5. denied to students, school officials, employees, or invitees,
>
> 6. lawful use of the property or facilities of the institution.

¶9 Defense counsel confirmed that he had received the proposed instructions and read them when the prosecutor sent them, but defense counsel made no statements at that time regarding the above-quoted proposed instruction.

¶10 The case then proceeded to trial, and after the close of the evidence but before the court charged the jury, the court asked whether defense counsel was "satisfied with the instructions." Defense counsel replied, "Yes. Defense is satisfied." At no time did defense counsel object to the proposed instruction tracking section 18-9-109(1)(b), nor does the record indicate that the court or the parties discussed that instruction.

5

¶11 The case went to the jury, and after deliberation, the jury found Rediger not guilty of intimidating a witness or victim under section 18-8-704 but guilty of interference with a public employee in a public building under section 18-9-110(1) and interference with staff, faculty, or students of an educational institution under section 18-9-109(2).

¶12 Rediger appealed, arguing, as pertinent here, that insufficient evidence supported his conviction under section 18-9-110(1) because Holland was not a public employee. He further argued that the discrepancy between the information and jury instructions regarding the interference with staff, faculty, or students charge resulted in a constructive amendment of his charging document.

¶13 In a partially split, published opinion, a division of the court of appeals affirmed in part and reversed in part. With respect to Rediger's sufficiency claim, the division concluded that "public employee" refers to "a victim employed by a public entity" and that the trial court had plainly erred in entering judgment on Rediger's conviction under section 18-9-110(1). Rediger, ¶¶ 30, 40–43, 411 P.3d at 912, 914. With respect to Rediger's constructive amendment claim, however, the division majority determined that Rediger had waived that claim through "affirmative acquiescence" when he stated, "Defense is satisfied" with the jury instructions. Id. at ¶¶ 53–61, 411 P.3d at 915–17.

¶14 Judge Richman specially concurred. Although he agreed with the result reached by the majority, he rejected the majority's premise that plain error review applies to sufficiency challenges raised for the first time on appeal, and he disagreed with the framework derived from People v. Lacallo, 2014 COA 78, 338 P.3d 442, and People v.

6

Heywood, 2014 COA 99, 357 P.3d 201, on which the majority had relied. Id. at ¶ 66–67, 411 P.3d at 918 (Richman, J., specially concurring).

¶15     The People petitioned and Rediger cross-petitioned for certiorari. We granted both petitions.

## II. Analysis

¶16     We first address the proper interpretation of "public employee" as that term is used in section 18-9-110(1), and we conclude that Holland was not a public employee under that statute. We then turn to Rediger's constructive amendment claim. After discussing the concepts of invited error, waiver, and forfeiture, we conclude that Rediger neither invited this error nor waived his right to make the claim. Rather, at most, he forfeited his constructive amendment claim by not making a contemporaneous objection to the purportedly erroneous instruction. Accordingly, we review this claim for plain error, and we ultimately conclude that a new trial is necessary.

## A. Public Employee

¶17     The People contend that the division erred in concluding that Holland was not a "public employee" within the meaning of section 18-9-110(1) and in therefore reversing Rediger's conviction for interference with a public employee. We are not persuaded.

## 1. Definition of "Public Employee"

¶18     We review issues of statutory construction de novo. Doubleday v. People, 2016 CO 3, ¶ 19, 364 P.3d 193, 196. If the language of the statute is clear and unambiguous, then we interpret the statute according to its plain meaning and look no further. See

Marsh v. People, 2017 CO 10M, ¶ 20, 389 P.3d 100, 105; Springer v. City & Cty. of Denver, 13 P.3d 794, 799 (Colo. 2000).

¶19 Here, although Title 18 does not define the term "public employee," it does define a similar term, "public servant," and that definition is instructive. "'Public servant' means any officer or employee of government, whether elected or appointed, and any person participating as an advisor, consultant, process server, or otherwise in performing a governmental function . . . ." § 18-1-901(3)(o), C.R.S. (2017) (emphases added). Accordingly, in the context of public servants, "public" means "governmental," and this court has interpreted the term "public" similarly in multiple other contexts. See, e.g., Univ. of Colo. v. Booth, 78 P.3d 1098, 1101 (Colo. 2003) (recognizing the Colorado Governmental Immunity Act's definition of "public entity" as the "state . . . and every other kind of district, agency, instrumentality, or political subdivision thereof organized pursuant to law") (quoting section 24-10-103(5), C.R.S. (2017)); Denver Area Labor Fed'n v. Buckley, 924 P.2d 524, 527–29 (Colo. 1996) (concluding that the term "public moneys" includes the moneys of a fund administered by a political subdivision of the state); Colo. Ass'n of Pub. Emps. v. Bd. of Regents of Univ. of Colo., 804 P.2d 138, 143 (Colo. 1990) (explaining that public corporations, in contrast with private ones, are "created as subdivisions of the state as an expedient device to carry out the functions of government"); Currigan v. Flor, 299 P.2d 1098, 1099

8

(Colo. 1956) (stating that it is "plain" that, in his capacity as a city councilman, a plaintiff was "holding public office").[2]

¶20 "Employee," in turn, is ordinarily defined as "[s]omeone who works in the service of another person (the employer) under an express or implied contract of hire, under which the employer has the right to control the details of work performance." Employee, Black's Law Dictionary (10th ed. 2014); see also Norton v. Gilman, 949 P.2d 565, 567 (Colo. 1997) ("Under the common law, the most important factor in determining whether a worker qualifies as an employee is the alleged employer's right to control the details of performance.").

¶21 Applying these settled definitions, we conclude that the term "public employee" is unambiguous and means a person who works in the service of a governmental entity under an express or implied contract of hire, under which the governmental entity has the right to control the details of the person's work performance. See People v. Moore, 2013 COA 86, ¶ 13, 338 P.3d 348, 350 ("Accordingly, we interpret the phrase 'public official or employee' in section 18-9-110(2) to apply only to a victim who is either an official or an employee of a public entity.").

¶22 We are not persuaded otherwise by the People's assertion that the General Assembly intended the phrase "public employee" to capture any employee who serves a governmental function, whether or not a governmental entity actually employs that person. Had the legislature intended such a broad application of section 18-9-110(1),

---

[2] The People themselves rely on this meaning of the word "public," defining a "governmental function" as a "public service [performed] on behalf of a public entity." People's Opening Br. at 20.

9

the statutory term defined above—"public servant"—would serve this purpose, and the term "public employee" would be superfluous. Specifically, at its broadest, "public servant" encompasses "any person participating . . . in performing a governmental function"—precisely the meaning that the People seek to impart to "public employee." § 18-1-901(3)(o). Our precedents clearly instruct, however, that "the use of different terms signals an intent on the part of the General Assembly to afford those terms different meanings." See, e.g., Robinson v. Colo. State Lottery Div., 179 P.3d 998, 1010 (Colo. 2008). And we may not construe a statute so as to render any statutory words or phrases superfluous. People v. Null, 233 P.3d 670, 679 (Colo. 2010). Accordingly, in our view, "public employee" must mean something different than "public servant."

### 2. Sufficiency of the Evidence

¶23     Having interpreted the term "public employee," we now turn to the question of whether sufficient evidence supports the jury's finding that Holland was a public employee within the meaning of section 18-9-110(1).

¶24     As an initial matter, we note that the People contend that Rediger's sufficiency claim should be reviewed only for plain error. This issue has divided divisions of our court of appeals, both as to whether a defendant must make a motion for a judgment of acquittal to preserve a sufficiency claim and whether unpreserved sufficiency claims should be reviewed de novo or only for plain error. Compare Rediger, ¶¶ 9–14, 411 P.3d at 910–11, and Lacallo, ¶¶ 4–24, 338 P.3d at 444–49, with People v. McCoy, 2015 COA 76M, ¶¶ 6–36, ___ P.3d ___, and People v. Randell, 2012 COA 108, ¶ 30,

10

297 P.3d 989, 997–98. Indeed, we have granted certiorari to resolve this division split.[3] We, however, need not wade into this dispute here because reviewing either de novo or under the form of plain-error review on which the division relied, see Rediger, ¶¶ 12–13, 411 P.3d at 910, leads to the same result, namely, that Rediger's conviction under section 18-9-110(1) must be reversed.

¶25 Under the division's view, when analyzing the evidence requires the preliminary interpretation of a statute, the court must first decide whether the error was obvious. Id. at ¶ 12, 411 P.3d at 910. The division indicated that an error of this nature would not be obvious if determining the meaning of the operative statutory terms under then-existing Colorado authority would be difficult. Id. Conversely, the error would be obvious if the statutory language was unambiguous, even if the operative statutory terms had not yet been interpreted and no previous case law would have alerted the trial court to the error. Id. at ¶ 13, 411 P.3d at 910. Applying this analysis to the case before it, the division concluded that the term "public employee" was unambiguous and that Holland was not a public employee. Id. at ¶¶ 16–19, 28–37, 411 P.3d at 911–913. Accordingly, Rediger's conviction under section 18-9-110(1) could not stand. Id. at ¶ 27, 411 P.3d at 912.

¶26 Here, whether we were to apply the division's analysis or to review this issue de novo, our analysis is functionally the same and produces the same result. As noted above, we believe that the term "public employee" is unambiguous and means a person

---

[3] See People in Interest of T.B., 2016 COA 151M, ___ P.3d ___, cert. granted, No. 17SC66, 2017 WL 3593888 (Colo. Aug. 21, 2017); McCoy, 2015 COA 76M, cert. granted, No. 15SC1095, 2016 WL 5723893 (Colo. Oct. 3, 2016).

who works in the service of a governmental entity under an express or implied contract of hire, under which the governmental entity has the right to control the details of the person's work performance. In this case, Holland testified, without contradiction, that she was employed by the Academy, the nonprofit school that she also owns, and not by a governmental entity. Moreover, no evidence showed that any governmental entity had the right to control the details of Holland's work performance. Accordingly, like the division, we conclude that Holland was not a public employee within the meaning of section 18-9-110(1) and that, therefore, sufficient evidence did not support Rediger's conviction on that count.

¶27 Notwithstanding the foregoing, the People urge us to conclude that Holland was a public employee for purposes of the statute because she was employed not only by the Academy but also, effectively, by the various governmental entities that accredit, license, monitor, audit, and inspect the Academy, including the Colorado Department of Education, the Colorado Department of Human Services, and the Colorado Department of Health. For three reasons, we are unpersuaded.

¶28 First, regulatory activities like those on which the People rely do not suffice to create an employment relationship at common law, and the People cite no applicable law to the contrary. In an ordinary employment relationship, an employer must possess the right to control the details of its employee's performance. Norton, 949 P.2d at 567. Here, although governmental entities may have had the authority to "check" the Academy's curriculum, to perform unannounced audits, and to send students for placement in the school (subject to the Academy's right to refuse those students), they

12

were not involved in the Academy's daily operations and did not control the details of Holland's or any other Academy employee's performance. Id. at 568 (concluding that the director of a county department of social services was not a state employee because the director served under the supervision of the county board and although the board "operate[d] within the regulatory framework established by the State, the State [was] not involved in [its] daily operations"); see also Logue v. United States, 412 U.S. 521, 530 (1973) (concluding that federal regulations requiring county jail employees to abide by specific standards of treatment for federal prisoners did not render the county employees employees of a federal agency; although the federal government retained the right to inspect the county jail at reasonable hours, it did not have the authority to supervise the conduct of the jail's employees).

¶29 Second, the People point to no one governmental entity that they deem to be Holland's employer. Instead, they rely on the piecemeal involvement of various governmental entities to cast Holland as a generalized "public employee." The People cite no applicable law supporting such a notion of an employee, and we have seen none.

¶30 Finally, in our view, the People's definition is overbroad because it would deem virtually all employees of regulated employers to be "public employees," contrary both to our precedents and to the common understanding of the distinction between public, governmental entities and private, regulated entities. See Colo. Ass'n of Pub. Emps., 804 P.2d at 143 ("Private nonprofit corporations are corporations formed by private individuals for a public purpose . . . . In contrast, public corporations are created as

subdivisions of the state as an expedient device to carry out the functions of government."); cf. Va. Office for Prot. & Advocacy v. Stewart, 563 U.S. 247, 273 (2011) (Roberts, C.J., dissenting) ("[P]rivate entities are different from public ones: They are private."); Jackson v. Metro. Edison Co., 419 U.S. 345, 350 (1974) ("The mere fact that a business is subject to state regulation does not by itself convert its action into that of the State . . . . Nor does the fact that the regulation is extensive and detailed.") (citation omitted).

¶31 For these reasons, we agree with the division that sufficient evidence did not support a finding that Holland was a "public employee." Accordingly, like the division, we conclude that Rediger's conviction under section 18-9-110(1) cannot stand.

## B. Constructive Amendment

¶32 Rediger next asserts that his conviction for interference with the staff, faculty, or students of an educational institution under section 18-9-109(2) resulted from an impermissible constructive amendment of the charging document in this case and that the division erred in deeming his claim to have been waived through affirmative acquiescence. The People respond that Rediger defaulted this claim under both the doctrine of waiver and the doctrine of invited error. Alternatively, the People argue that the trial court did not plainly err in permitting the amendment.

¶33 We first consider the doctrines of invited error and waiver, and we conclude that neither doctrine applies. Next, we conclude that, at most, Rediger forfeited his constructive amendment claim. As a result, we review for plain error, and we

14

ultimately conclude that the trial court plainly erred in permitting the constructive amendment. We thus reverse and remand for a new trial on this count.

## 1. Invited Error

¶34 The doctrine of invited error prevents a party from complaining on appeal of an error that he or she has invited or injected into the case; the party must abide the consequences of his or her acts. People v. Zapata, 779 P.2d 1307, 1309 (Colo. 1989). Invited error is a narrow doctrine and applies to errors in trial strategy but not to errors that result from oversight. People v. Wittrein, 221 P.3d 1076, 1082 (Colo. 2009). We have thus concluded that a party invites an error in a jury instruction when that party drafted or tendered the erroneous instruction. See, e.g., Zapata, 779 P.2d at 1308–10; see also Gray v. People, 342 P.2d 627, 630 (Colo. 1959) ("[W]e cannot consider the trial court to be in error for giving an instruction demanded by the defense.").

¶35 Here, Rediger did not draft or tender the instruction at issue, nor did he request that the instruction be given or even discuss it on the record. Indeed, nothing in the record suggests that either he, the prosecution, or the trial court even noticed that the instruction tracked the wrong subsection of the statute. Accordingly, we agree with the division below that Rediger cannot fairly be said to have "injected" the error into this case. See Rediger, ¶ 60, 411 P.3d at 916. Therefore, he did not invite it.

¶36 We are not persuaded otherwise by the People's reliance on Horton v. Suthers, 43 P.3d 611, 619 (Colo. 2002), in which this court suggested that invited error may apply when "one party expressly acquiesces to conduct by the court or the opposing party." In Horton, the director of the Department of Corrections expressly agreed that the

15

district court had jurisdiction to consider a petition for habeas corpus and further stated that he did not oppose the relief requested, effectively conceding that that relief should be granted. Id. at 614, 618. Nevertheless, on appeal, the director reversed course and opposed the requested relief, fully admitting that his new position contradicted his earlier concession. Id. at 618.

¶37 Rediger's general expression of "satisfaction" with the jury instructions here does not resemble the specific admissions and subsequent contradictions of the director in Horton. To the contrary, as noted above, the record before us bears no indication that Rediger was aware of the discrepancy between the jury instructions and his criminal information, let alone that he affirmatively injected that discrepancy. Rather, unlike in Horton, the record here suggests that the discrepancy between Rediger's criminal information and the jury instructions likely resulted from oversight, not intent or trial strategy.

¶38 Accordingly, we conclude that the doctrine of invited error does not bar appellate review of Rediger's constructive amendment claim.

## 2. Waiver and Forfeiture

¶39 Waiver, in contrast to invited error, is "the intentional relinquishment of a known right or privilege." Dep't of Health v. Donahue, 690 P.2d 243, 247 (Colo. 1984) (emphases added). We "do not presume acquiescence in the loss of fundamental constitutional rights, and therefore indulge every reasonable presumption against waiver." People v. Curtis, 681 P.2d 504, 514 (Colo. 1984).

16

¶40 The requirement of an intentional relinquishment of a known right or privilege also distinguishes a waiver from a forfeiture, which is "the failure to make the timely assertion of a right." United States v. Olano, 507 U.S. 725, 733 (1993); see also United States v. Carrasco-Salazar, 494 F.3d 1270, 1272 (10th Cir. 2007) ("[W]aiver is accomplished by intent, [but] forfeiture comes about through neglect.") (quoting United States v. Staples, 202 F.3d 992, 995 (7th Cir. 2000)). This distinction is important because a waiver extinguishes error, and therefore appellate review, but a forfeiture does not. Olano, 507 U.S. at 733. Accordingly, this court may review a forfeited error under the plain error standard. See People v. Miller, 113 P.3d 743, 751 (Colo. 2005) (noting that the court will review for plain error instructional omissions to which the defendant did not object); accord Crim. P. 52(b) ("Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court.").

¶41 Here, the People contend—and the division below concluded—that Rediger waived his objection to the constructive amendment and therefore extinguished any error when his counsel stated that counsel was "satisfied" with the jury instructions. We, however, are not convinced that this statement, standing alone, evinced Rediger's intentional relinquishment of a known right or privilege.

¶42 The record before us reveals no evidence, either express or implied, that Rediger intended to relinquish his right to be tried in conformity with the charges set forth in his charging document when he generally acquiesced to the jury instructions. See Donahue, 690 P.2d at 247 (acknowledging that a waiver may be express or implied but perceiving no waiver because Donahue's failure to raise an issue was not "the type of

17

unequivocal act indicative of a waiver" and did not "clearly manifest[] any intent by Donahue to relinquish her claim") (emphases added). For example, the record contains no evidence that Rediger considered objecting to the erroneous instruction but then, "for some tactical or other reason, rejected the idea." See United States v. Perez, 116 F.3d 840, 845–46 (9th Cir. 1997) (perceiving no waiver when the record revealed "that neither defendants, the government, nor the court was aware" that a particular element should have been submitted to the jury).

¶43 Nor, as discussed above, do we perceive any evidence that Rediger knew of the discrepancy between the People's tendered jury instructions and the charging document. See Gov't of Virgin Islands v. Rosa, 399 F.3d 283, 293 (3d Cir. 2005) (perceiving no waiver but finding only a forfeiture when the record did not indicate that counsel knew of and considered the controlling law, despite his repeated acquiescence to the jury instructions). In fact, the record reveals no discussion of this particular instruction at all.

¶44 In these circumstances, we conclude that neglect, not intent, explains Rediger's lack of an objection to the constructive amendment. Accordingly, in our view, Rediger's acquiescence amounts to a forfeiture, not a waiver.

¶45 We are not persuaded otherwise by the People's assertions that Rediger's waiver is established by the facts that his counsel had an opportunity to review the proposed instructions before trial and confirmed that he had done so. Although these facts confirm that Rediger's counsel read the proposed instructions, they do not show Rediger's or counsel's knowledge of the discrepancy between the jury instructions and

charging document or that either Rediger or his counsel intentionally relinquished the right to object to a constructive amendment. See United States v. Zubia-Torres, 550 F.3d 1202, 1207 (10th Cir. 2008) ("The record is simply devoid of any evidence that defense counsel knew of the argument or considered making it. We will not presume a waiver or infer one from a record as sparse as this . . . . [W]e . . . hold, consistent with our precedents, that there must be some evidence that the waiver is 'knowing and voluntary,' beyond counsel's rote statement that she is not objecting . . . .").

¶46 In arguing for a waiver, the People appear to be requesting that we presume from Rediger's acquiescence an intentional relinquishment of a known right. As noted above, however, it has long been settled that we must indulge "every reasonable presumption against waiver." Curtis, 681 P.2d at 514 (emphasis added).

¶47 Accordingly, we conclude that Rediger forfeited his constructive amendment argument, and we therefore review that argument for plain error.[4]

### 3. Plain Error

¶48 An error is plain if it is obvious and substantial and so undermines the fundamental fairness of the trial itself as to cast serious doubt on the reliability of the judgment of conviction. People v. Weinreich, 119 P.3d 1073, 1078 (Colo. 2005). A constructive amendment, in turn, occurs when a jury instruction "changes an essential

---

[4] Because we conclude that the error was plain, we need not consider whether a constructive amendment amounts to structural error. See Hagos v. People, 2012 CO 63, ¶ 10, 288 P.3d 116, 119 ("[C]ertain errors are structural errors, which require automatic reversal without individualized analysis of how the error impairs the reliability of the judgment of conviction.").

19

element of the charged offense and thereby alters the substance of the charging instrument." People v. Rodriguez, 914 P.2d 230, 257 (Colo. 1996).

¶49 Here, pursuant to the criminal information and the jury's verdict, Rediger was charged with and convicted of violating section 18-9-109(2). That statute required the People to prove that Rediger "willfully impede[d] the staff or faculty of [an educational institution] in the lawful performance of their duties or willfully impede[d] a student of the institution in the lawful pursuit of his educational activities through the use of restraint, abduction, coercion, or intimidation or when force and violence [were] present or threatened." § 18-9-109(2).

¶50 The elemental jury instruction, in contrast, asked the jury to consider whether Rediger had violated section 18-9-109(1)(b). As pertinent here, that section required the People to prove only that Rediger "willfully den[ied] to students, school officials, employees, and invitees . . . [l]awful use of the property or facilities of [an educational] institution." § 18-9-109(1)(b).

¶51 The difference between these charges is manifest. Most notably for purposes here, the charged offense, section 18-9-109(2), required a showing of "restraint, abduction, coercion, or intimidation," or force, violence, or the threat thereof. § 18-9-109(2) The offense presented to the jury, however, did not require these elements. Accordingly, the information did not place Rediger on notice that he would have to defend against the different charge submitted to the jury. See Weinreich, 119 P.3d at 1079 (reversing the defendant's conviction when "the information did not place Weinreich on notice that he would have to defend against the charge actually

20

submitted to the jury"). Moreover, the offense presented to the jury allowed it to convict Rediger of a crime not charged in the information, and one for which the People's burden of proof was materially lessened. See Cervantes v. People, 715 P.2d 783, 786 (Colo. 1986) ("[A]n information that fails to charge an essential element of an offense is defective."). In our view, this distinction amounted to a constructive amendment of the criminal information. See Stirone v. United States, 361 U.S. 212, 219 (1960) ("[H]e was convicted on a charge the grand jury never made against him. This was fatal error."). In addition, in light of this error, we perceive a substantial likelihood that the jury found Rediger guilty of a violation of section 18-9-109(2), the charge reflected on the verdict form, without finding that Rediger had, "through the use of restraint, abduction, coercion, or intimidation or when force and violence [were] present or threatened," willfully impeded a staff member, teacher, or student in the lawful performance of his or her duties or pursuit of his or her educational activities. § 18-9-109(2).

¶52 Because we believe that the error here was obvious and substantial and so undermined the fundamental fairness of Rediger's trial as to cast serious doubt on the reliability of the judgment of conviction, see Weinreich, 119 P.3d at 1078, we conclude that the trial court plainly erred in allowing Rediger's conviction to stand in spite of the constructive amendment.

¶53 In so concluding, we are not persuaded by the People's contention that Rediger's charging document was "effectively amended" when the prosecution tendered the erroneous instructions. No law from this court, nor any of the cases cited by the People,

21

supports the proposition that an information may be amended, absent any motion to amend or stipulation or agreement by the defendant, by way of proposed jury instructions.

## C. Remedy

¶54     Having thus found plain error, the question remains as to the proper remedy. Rediger asserts that the evidence did not support a finding of guilt under section 18-9-109(2) as originally charged, and therefore we should vacate the conviction and dismiss the charge. See People in Interest of H.W., 226 P.3d 1134, 1138–40 (Colo. App. 2009). The People, in contrast, contend that if we reach the merits of the issue and perceive a constructive amendment, then we should remand for a new trial. See People v. Lopez, 140 P.3d 106, 109 (Colo. App. 2005). Because we cannot say, as a matter of law, that the evidence did not support a conviction under section 18-9-109(2), we reverse and remand for a new trial.

¶55     When confronted with a claim of insufficient evidence, we review the record de novo to determine whether the evidence, viewed in the light most favorable to the prosecution, was both substantial and sufficient to support the conclusion by a reasonable mind that the defendant was guilty beyond a reasonable doubt. People v. Perez, 2016 CO 12, ¶ 8, 367 P.3d 695, 697.

¶56     As pertinent here, Rediger's conviction under section 18-9-109(2) required the People to prove that:

> on the premises of any educational institution or at or in any building or other facility being used by any educational institution, [Rediger] willfully impede[d] the staff or faculty of such institution in the lawful performance

22

of their duties or willfully impede[d] a student of the institution in the lawful pursuit of his educational activities through the use of restraint, abduction, coercion, or intimidation or when force and violence [were] present or threatened.

§ 18-9-109(2).

¶57 Here, the evidence presented, when viewed in the light most favorable to the People, showed that Rediger drove to the Academy during the school day and spoke to Holland concerning the hay-theft charges that she and her husband had pursued against Rediger. Holland repeatedly asked Rediger to leave, but he refused to do so. Instead, at least according to Holland, Rediger then followed her into the classroom, acted "very aggressive," and stated that if he did not immediately get the matter settled, then he would tell the sheriff's department that her husband had stolen a diesel truck. Rediger's conduct scared Holland, and she stated that she felt "really threatened" by it. Finally, Rediger relented, left the classroom, and drove away.

¶58 Viewing these facts in the light most favorable to the prosecution, we cannot conclude that the evidence was insufficient to allow a reasonable juror to find that Rediger, on the premises of an educational institution, willfully impeded Holland in the lawful performance of her duty as a teacher through the use of intimidation. Accordingly, we reverse Rediger's conviction on this count and remand for a new trial. We express no opinion as to whether the prosecution must proceed on the count originally charged, or whether it may seek to amend the information at this point.

23

## III. Conclusion

¶59    For these reasons, we conclude that Holland was not a public employee within the meaning of section 18-9-110(1) and that therefore, the evidence did not support Rediger's conviction for interference with a public employee in a public building. We further conclude that Rediger neither waived nor invited error with respect to his constructive amendment claim and that the trial court plainly erred in allowing Rediger to be convicted on the charge of interfering with the staff, faculty, or students of an educational institution, as constructively amended, thereby necessitating a new trial.

¶60    Accordingly, we affirm in part and reverse in part the judgment of the division below, and we remand this case for further proceedings consistent with this opinion.