24CA0290 Peo in Interest of XW 09-05-2024 COLORADO COURT OF APPEALS Court of Appeals No. 24CA0290 El Paso County District Court No. 22JV30034 Honorable Robin Chittum, Judge The People of the State of Colorado, Appellee, In the Interest of X.W., a Child, and Concerning T.W., Appellant. JUDGMENT AFFIRMED Division VII Opinion by JUDGE KUHN Tow and Gomez, JJ., concur NOT PUBLISHED PURSUANT TO C.A.R. 35(e) Announced September 5, 2024 Kenneth R. Hodges, County Attorney, Nicole S. Burton, Assistant County Attorney, Colorado Springs, Colorado, for Appellee Debra W. Dodd, Guardian Ad Litem Andrew A. Gargano, Office of Respondent Parents’ Counsel, Denver, Colorado, for Appellant 
1 ¶ 1 In this dependency and neglect action, T.W. (mother) appeals the judgment allocating parental responsibilities for X.W. (the child) to J.T.F. (father). We affirm the judgment. I. Background ¶ 2 The El Paso County Department of Human Services filed a petition in dependency and neglect alleging that mother subjected the child and his older siblings to physical abuse. The petition also alleged that mother had a history of substance abuse, which was putting the child at risk. Finally, the petition alleged that mother had prior involvement with the Department. When the petition was filed, the child was just under two years old. The child’s siblings are not part of this appeal. ¶ 3 Mother admitted that the child’s environment was injurious, and the juvenile court adjudicated the child dependent and neglected before adopting a treatment plan for both parents. Sixteen months after the petition was filed, father moved for an allocation of parental responsibilities (APR). Mother did not object, but she requested mediation to “work out visitation.” ¶ 4 Almost two years after the Department filed the petition, the juvenile court held an APR hearing. Based on mother’s agreement 
2 to renegotiated terms, the court entered judgment without a contested hearing, awarding physical custody and sole decision-making responsibility to father. II. Reasonable Efforts ¶ 5 Mother first argues that the juvenile court erred by entering the APR judgment because the Department failed to make reasonable efforts to reunify her with the child. We disagree. ¶ 6 A department must make reasonable efforts to rehabilitate parents and reunite families following the placement of abused or neglected children out of the home. §§ 19-1-103(114), 19-3-100.5, 19-3-208(1), 19-3-604(2)(h), C.R.S. 2024. Reasonable efforts “means the exercise of diligence and care . . . for children . . . who are in[, or at imminent risk of being placed in,] foster care or out-of-home placement.” § 19-1-103(114). ¶ 7 But the child was not in out-of-home placement when the APR judgment entered — father had custody. § 19-1-103(107) (“Placement out of the home” means placement in a home or center operated or licensed by the Department of Human Services.). And the court allocated parental responsibilities between parents, not to a nonparent. See People in Interest of A.S.L., 2022 COA 146, ¶ 20 
3 (holding that the court is required to consider reasonable efforts when it enters an APR to a nonparent). Accordingly, the juvenile court was not required to make reasonable efforts findings as part of the APR judgment. See §§ 19-1-103(114), 19-3-100.5(1), 19-3-208(1), 19-3-604(2)(h); cf. A.S.L., ¶ 20. ¶ 8 Mother claims that the Department was required to make reasonable efforts for the time periods during the case when the child was in out-of-home placement. But she does not explain how the court’s findings at earlier permanency planning hearings would create an additional requirement for the APR judgment, which was entered when the child was no longer placed out of the home. And contrary to mother’s assertion, the permanency planning statute does not apply to a child who is placed at home with a parent. §§ 19-1-103(107), 19-3-702(1), C.R.S. 2024. ¶ 9 Mother next argues that reasonable efforts findings were required in her case because the child was at “imminent risk” of out-of-home placement because of father’s past failures to comply with his treatment and safety plans. As mother states, the Children’s Code requires reasonable efforts for children and youth who are in “out-of-home placement or are at imminent risk of foster 
4 care or out-of-home placement.” § 19-1-103(114). It is true the child was removed from father’s custody for a short time during the case. But nothing in the record suggests that father was not in compliance with his treatment or safety plans when the court entered the APR judgment. To the contrary, the caseworker’s report to the court indicated that the Department had no concerns about the child’s safety and that all his needs were being met in his father’s home. Additionally, the court found when entering the APR judgment that permanency had been achieved for the child in his father’s custody. The court’s judgment granting an APR to father and dismissing the child from the dependency and neglect action belies mother’s claim that the child was at “imminent risk” for out-of-home placement. ¶ 10 To the extent that mother includes a separate due process argument as part of her reasonable efforts claim, we decline to address it. At no point during the proceedings did mother give the juvenile court an opportunity to address any due process concerns she may have had. See People in Interest of T.E.R., 2013 COA 73, ¶ 30 (generally, issues not raised in the trial court will not be considered on appeal); see also People v. Salas, 2017 COA 63, ¶ 29 
5 (“We do not require that parties use ‘talismanic language’ to preserve particular arguments for appeal, but the trial court must be presented with an adequate opportunity to make findings of fact and conclusions of law on any issue before we will review it.”) (citations omitted). III. Best Interest of the Child and Waiver ¶ 11 Mother next contends that the juvenile court erred by allocating sole decision-making responsibility to father and only granting mother two hours of family time each week, which she argues was not in the child’s best interests. Specifically, mother now argues that “only equally shared custody could assure consistent and guaranteed contact between mother and [the child].” ¶ 12 We conclude that mother waived this argument by agreeing to allocate physical custody and sole decision-making responsibility to father. A. Legal Principles ¶ 13 Waiver is the intentional relinquishment of known right. See People v. Rediger, 2018 CO 32, ¶ 39. When a party waives an issue below, we do not review it on appeal. Id. at ¶ 40. A parent may expressly or impliedly waive a statutory right, but the waiver must 
6 be voluntary. See People in Interest of J.R.M., 2023 COA 81, ¶ 9. A statutory right may be waived by the party’s statements or that of their counsel. See People v. Baird, 66 P.3d 183, 190 (Colo. App. 2002). B. Additional Background ¶ 14 Mother appeared in person at the APR hearing. She agreed to father “having legal decision-making” responsibility and to her having two hours of family time per week. Mother requested, and received, an additional requirement that father inform her of major decisions for the child. After the agreements were entered on the record, the juvenile court advised mother regarding her right to a contested hearing on the APR. The court asked if mother had any questions about the rights she would be giving up. Mother’s response was not captured by the recording but caused the court to ask if mother wanted to have a hearing, and mother responded that she did. Mother then had the following exchange with the court: THE COURT: Well, then you want to have a hearing with regard -- [Mother]: Yeah. 
7 THE COURT: Oh, okay. So you do want to have a formal hearing regarding the allocation of parental responsibilities. [Mother]: I don’t get to see him right now. I haven’t got to see my son in months. THE COURT: Well, we’re hoping that -- [Mother]: (talking over the court) three hours. THE COURT: Two is what I think they said. [Mother]: Exactly, how is that fair? THE COURT: Understood. [Mother]: Are we almost done? Can I go? THE COURT: Not yet, because we got to talk. If you want to have a hearing, it’s going to take a while and we’ve got to set a hearing. ¶ 15 The court then stated, “I’m not adopting the APR at this point. I’ll make a reasonable efforts finding with regards to [the child] and we need to set this for --.” However, the court did neither, because the parties pointed out that they were already set for a contested hearing that day and would prefer to proceed without setting an additional date. ¶ 16 The juvenile court recessed so mother could confer with her attorney before beginning the contested part of the hearing. Mother 
8 asked why she had to stay to talk to her attorney and why the hearing had to be held that day but agreed to talk to counsel. ¶ 17 The juvenile court recalled the case twenty minutes later. At that time, mother’s counsel reported that she spoke to mother and mother “did give . . . authority to enter into an agreement on her behalf.” Counsel further informed the court that mother “did leave” and was “not intending on coming back.” Mother’s counsel reported that mother was upset about the status of her visits with the child but she nonetheless “underst[ood] the nature of what this hearing would be for in terms of the custody orders.” ¶ 18 Based on mother’s agreement, the juvenile court approved the APR, including the modifications made on the record regarding increased parenting time for mother and father’s duty to inform mother of major decisions. C. Analysis ¶ 19 The Department and guardian ad litem argue that mother waived this issue when she agreed that father should have legal decision-making responsibility and gave her counsel authority to enter into an agreement for an APR after receiving an advisement. We agree. 
9 ¶ 20 Mother argues that she did not waive the issue. In support, she first points to an exchange between the juvenile court and her counsel informing the court that she did not agree with the initial amount of proposed visitation. But mother’s disagreement with the initial offer is not relevant. Our review of the record reveals that the initial amount proposed was one hour of family time per week, not the two hours ultimately ordered. Father proposed increasing the initial amount offered to two hours per week, and mother confirmed directly with the court that she agreed with the new offer. Furthermore, she later authorized her counsel to confirm her agreement. In any case, mother’s dissatisfaction with the hours of family time allotted to her does not change her explicit agreement to allocate father sole decision-making responsibility. ¶ 21 Mother next contends that even if she agreed to father having sole decision-making responsibility, “the lower court was required to base its APR ruling on the best interests of the child,” and so “mother’s waiver of a hearing did not constitute a waiver of her right to appeal the ruling.” ¶ 22 We reject such a distinction. If mother believed that the statutory criteria for an APR would not be met, she could have 
10 requested a hearing on that issue. By entering into an agreement to allocate rights to father and waiving her right to a hearing, mother waived her right to challenge the APR ruling. See Rediger, ¶ 39. And mother invited any error in the juvenile court’s adoption of the proposed judgment that was based on her decision to waive a hearing to challenge those statutory criteria. See People in Interest of S.N-V., 300 P.3d 911, 916 (Colo. App. 2011) (the invited error doctrine applies when a party invites or injects an error in the proceedings and later claims that the error should be a basis for reversal on appeal). ¶ 23 Finally, mother contends that she did not waive her right to appeal the APR judgment as a whole because she “only left and acquiesced to the ruling after the court ruled the [D]epartment had made reasonable efforts, which she had already tied to the best interests of her child.” ¶ 24 But mother did not mention the child’s best interests during her exchanges with the juvenile court during the APR hearing. And her counsel, who reported that mother was frustrated with the status of her family time, did not mention the child’s best interests at any point during the hearing. 
11 ¶ 25 In any case, it is clear from the record made by mother’s counsel that while mother disagreed with the Department about family time, she still asked her counsel to enter an agreement on her behalf. And as discussed above, reasonable efforts made by the Department are not a factor that the juvenile court needs to consider when determining whether an APR to a parent is in a child’s best interests.
1 ¶ 26 Thus, the record makes clear that by the end of the APR hearing, mother intentionally relinquished her right to challenge the court’s entry of an APR to father. She attempts to avoid this problem on appeal by asking us to vacate the APR judgment because of the juvenile court’s alleged failure to consider the child’s best interests. We conclude that mother’s challenge to the APR judgment is waived and therefore do not address its merits. IV. Miscarriage of Justice ¶ 27 Finally, mother urges us to consider the merits of her claim under a miscarriage of justice exception. See People in Interest of 1 Notably, mother does not argue that her waiver was based on a faulty advisement, involuntary, or otherwise ineffective. See People in Interest of K.J.B., 2014 COA 168, ¶ 29 (“Statutory rights may be waived if the waiver is voluntary.”). 
12 M.B., 2020 COA 13, ¶ 21 (“[G]iven the constitutional nature of parental rights, we will recognize a miscarriage of justice exception for review of unpreserved errors.”). We decline to do so, both because the APR judgment did not sever mother’s parental rights, and because mother did not merely fail to preserve her claim, she waived the issue. V. Disposition ¶ 28 The judgment is affirmed. JUDGE TOW and JUDGE GOMEZ concur.