22CA0687 Peo v Thompson 12-19-2024

COLORADO COURT OF APPEALS

Court of Appeals No. 22CA0687
Pitkin County District Court No. 21CR6
Honorable Christopher G. Seldin, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Anton Tower Thompson,

Defendant-Appellant.

SENTENCES AFFIRMED, ORDER VACATED,
AND CASE REMANDED WITH DIRECTIONS

Division III
Opinion by JUDGE DUNN
Gomez and Hawthorne*, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced December 19, 2024

Philip J. Weiser, Attorney General, Lane Towery, Assistant Attorney General
Fellow, Denver, Colorado, for Plaintiff-Appellee

Robin M. Lerg, Alternate Defense Counsel, Montrose, Colorado, for Defendant-
Appellant

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art.
VI, § 5(3), and § 24-51-1105, C.R.S. 2024.

¶ 1    A jury convicted defendant, Anton Tower Thompson, of second

degree aggravated motor vehicle theft, and he pleaded guilty to

violation of bail bond conditions.  The trial court sentenced him to a

controlling two-year prison sentence for these crimes consecutive to

a prison sentence in a separate case.  The court also imposed

restitution.  Thompson appeals his sentences and restitution order.

We affirm the sentences, vacate the restitution order, and remand

for correction of the mittimus.

## I.    Background

¶ 2    In 2019, Thompson pleaded guilty to contributing to the

delinquency of a minor (the delinquency case).[1]  He received a

deferred judgment with a two-year probationary sentence.

¶ 3    While on probation in the delinquency case, the prosecution

charged Thompson with menacing and possession of a weapon by a

previous offender in a separate case (the menacing case).  The court

released Thompson on bond pending trial.[2]

---

[1] We take judicial notice of the delinquency case, Pitkin County
District Court Case No. 18CR107, as a related case under CRE
201(b).  *See Doyle v. People*, 2015 CO 10, ¶ 12.
[2] As before, we take judicial notice of the menacing case, Pitkin
County District Court Case No. 20CR76, as a related case.  *See id.*

¶ 4     While on bond in the menacing case, the prosecution brought this case, charging Thompson with, as relevant here, second degree aggravated motor vehicle theft and violation of bail bond conditions (the auto theft case). A jury convicted Thompson of second degree aggravated motor vehicle theft, and he pleaded guilty to violation of bail bond conditions.

¶ 5     At the sentencing hearing, the trial court addressed sentencing in the auto theft case and resentencing in the delinquency case. The prosecution requested a two-year prison sentence for aggravated motor vehicle theft consecutive to a thirty-month sentence for contributing to the delinquency of a minor because "this is a situation where it's two separate crimes." Defense counsel urged the court to exercise its discretion to impose concurrent sentences in the "lower end of the two to six range."

¶ 6     The trial court noted that it had initially viewed community corrections as "an appropriate path forward" for Thompson, but given Thompson's pending case, community corrections wasn't an option. The court then addressed its "practice" against imposing concurrent sentences for unrelated offenses:

And here what you run into with me, with this [c]ourt, is just a practice that I follow with respect to consecutive versus concurrent sentencing.

It has nothing to do with [Thompson]. It has everything to do with me being consistent in my sentencing. And that is, when I have two completely unrelated criminal acts, I do not issue concurrent sentences. I don't know that I've ever done it.

I don't think it's a good policy because in my opinion, when you do that, you're essentially communicating to the Defendant, you know, it's okay that you went out and committed this completely new crime with completely separate facts. Don't worry about that. There's not going to be any extra consequences at all for that.

¶ 7　　The court revoked Thompson's probationary sentence in the delinquency case and resentenced him to thirty months in prison followed by thirty-six months of mandatory parole. And the court sentenced Thompson to two years in prison on the aggravated motor vehicle theft count concurrent to three months in jail for violation of bail bond conditions. But it ran the controlling two-year prison sentence consecutive to the sentence in the delinquency case.

3

¶ 8     The court entered a restitution order 125 days after the sentencing hearing.

## II.     Consecutive Sentences

¶ 9     Thompson asks us to vacate his sentences in the auto theft and delinquency cases and remand for resentencing.  He contends that the trial court abused its discretion by adhering to its "practice" of imposing consecutive sentences for "two completely unrelated criminal acts," rather than considering the individual circumstances of his case.  We disagree.

¶ 10     A sentencing court generally has discretion to impose either concurrent or consecutive sentences.  *See Juhl v. People*, 172 P.3d 896, 899 (Colo. 2007).  In exercising its discretion, the court must consider the nature of the offense, the character and rehabilitative potential of the offender, the deterrent effect of the sentence, and the protection of the public.  *People v. Kirby*, 2024 COA 20, ¶ 66.  But the court need only "provide a reasonable explanation" for the sentence and "need not engage in a point-by-point discussion of every factor it considers."  *Id.*

¶ 11     We review the trial court's decision to impose consecutive sentences for an abuse of discretion.  *Chirinos-Raudales v. People*,

2023 CO 33, ¶ 23. A court abuses its discretion if its ruling is manifestly arbitrary, unreasonable, or unfair, or if it misapplies the law. *Id.* A court also errs if it misapprehends the scope of its sentencing discretion. *See People v. Propst,* 2021 COA 13, ¶¶ 15, 26. We won't disturb a trial court's sentencing decision when we are able to "glean" the reasons for the sentence from the record. *People v. Herrera,* 2012 COA 13, ¶ 50.

¶ 12 We disagree with Thompson that the trial court misapprehended its sentencing discretion by imposing consecutive sentences. Although the court noted its "practice" of not imposing concurrent sentences for "two completely unrelated criminal acts," it recognized it had discretion to impose concurrent sentences by acknowledging, for example, that it regularly accepted plea agreement provisions stipulating to concurrent sentences for separate offenses.

¶ 13 The court also explained the rationale for its "practice." Specifically, the court focused on deterrence, stating that by imposing concurrent sentences for separate offenses, "you're essentially communicating to the Defendant, you know, it's okay that you went out and committed this completely new crime with

5

completely separate facts. Don't worry about that. There's not going to be any extra consequences at all for that." Deterrence is a proper sentencing consideration. *See Kirby*, ¶ 66 (noting that a court must consider "the deterrent effect of the sentence").

¶ 14 Beyond that, the court addressed Thompson's individual circumstances, including the facts of both cases, his criminal history, his probation violations, and the court's desire for Thompson to succeed. And it commented on Thompson's potential for rehabilitation:

> [I]f you don't have that voice inside your head saying, man, I am going to look really bad to the Judge if I do this. If you don't have that voice inside your head causing you to pause and stop and think before you act, then — you know, it makes me worry about you. It makes me worry about what's going to happen in the future.

¶ 15 Thus, unlike *Propst*, on which Thompson relies, the record does not indicate that the trial court believed it lacked the discretion to impose a concurrent sentence. *Propst*, ¶ 26. Instead, it demonstrates that the court exercised its discretion to impose a consecutive sentence and "provide[d] a reasonable explanation" for the sentence. *See Kirby*, ¶ 66.

¶ 16    Thus, we conclude the court didn't abuse its discretion by sentencing Thompson to consecutive sentences.

### III.    Restitution

¶ 17    Thompson contends — and we agree — that we must vacate the restitution order because it was entered after the ninety-one-day statutory deadline without a timely express good cause finding to extend the deadline.

¶ 18    A judgment of conviction must include one of four orders regarding restitution, s*ee* § 18-1.3-603(1), C.R.S. 2024, one of which is that the "defendant is obligated to pay restitution, but that the specific amount of restitution shall be determined within the ninety-one days immediately following the order of conviction, unless good cause is shown for extending the time period." § 18-1.3-603(1)(b).  This deadline refers to the trial court's determination of the final restitution amount the defendant must pay, and the ninety-one-day deadline "may be extended only if, before the deadline expires, the court expressly finds good cause for doing so." *People v. Weeks*, 2021 CO 75, ¶ 5.  If the court fails, within the ninety-one-day deadline, to either make the required restitution

finding or find good cause for its failure to do so, then it loses the authority to enter a restitution order.  *See id.* at ¶ 45.

¶ 19     Whether a court has authority to order a defendant to pay restitution is a legal question that we review de novo.  *People v. Roddy*, 2021 CO 74, ¶ 23.

¶ 20     It's undisputed that the trial court imposed restitution 125 days after the judgment of conviction and without a timely and express finding of good cause to extend the deadline.  *See Weeks*, ¶ 40 ("[A]ny finding of good cause must be made expressly and before the court's deadline expires.").  The trial court therefore lacked authority to impose restitution.[3]  *See id.* at ¶ 45.

¶ 21     We are not persuaded by the People's claim that Thompson either invited or waived the untimely restitution order simply by requesting an opportunity to respond to the requested restitution

---

[3] We acknowledge that at the sentencing hearing the court didn't expressly find that Thompson was liable for restitution under section 18-1.3-603(1), C.R.S. 2024, which rendered the original sentence illegal under Crim. P. 35(a).  *See People v. Tennyson*, 2023 COA 2, ¶ 31 ("[A] district court imposes an illegal sentence if it fails to consider restitution when imposing sentence.") (*cert. granted* Sept. 11, 2023).  But that was true in *Weeks* as well.  *See People v. Weeks*, 2021 CO 75, ¶ 11.  Yet, the supreme court still applied the ninety-one-day deadline in that subsection.  Thus, we follow *Weeks*.

and request a hearing "if need be." Thompson had a right to respond to the requested restitution, and he made a timely request to respond. He didn't ask the court to extend the statutory deadline or set a hearing outside the statutory deadline, nor did he express an intent to waive his statutory rights. *See People v. Babcock*, 2023 COA 49, ¶ 13 (holding that a defendant who asked the trial court to set a restitution hearing after the ninety-one-day deadline expired waived the right to challenge the timeliness of the order).

¶ 22 True, Thompson ultimately didn't file a response before the statutory deadline expired. But the court never set a deadline for Thompson to file a response. And we don't agree that this inaction reflects either an invitation for the trial court to disregard its statutory deadline to impose restitution within ninety-one days or an intentional relinquishment of his right to have restitution imposed within the statutory deadline. *See People v. Rediger*, 2018 CO 32, ¶¶ 34, 39 (explaining invited error and waiver doctrines).

¶ 23 What's more, the restitution statute "places an obligation on the sentencing court to ensure that restitution is resolved within ninety-one days from the entry of the order of conviction." *People v. Brassill*, 2024 COA 19, ¶ 20; *see also* § 18-1.3-603(1)(b) (referring to

the trial court's obligation to enter a timely restitution order). And the prosecution here alerted the trial court to the statutory deadline and requested the court to enter a final restitution order before the deadline expired. Because the court didn't enter the restitution order within the statutory deadline, it lost authority to impose restitution and, thus, we must vacate the restitution order. *See Weeks*, ¶ 45.

## IV. Mittimus

¶ 24 Thompson pleaded guilty to violation of bail bond conditions, but the mittimus states that Thompson "was found guilty after trial of" both aggravated motor vehicle theft and violation of bail bond conditions. It also lists a "date of plea" for the violation of bail bond conditions count. Thompson requests that we remand to the trial court to correct the mittimus to plainly show that Thompson pleaded guilty to violation of bail bond conditions.

¶ 25 Because we agree with the People that the mittimus is "admittedly confusing," we remand to the trial court to correct the mittimus to clarify that Thompson pleaded guilty to violation of bail bond conditions and to reflect that no restitution is owed. *See* Crim. P. 36 ("Clerical mistakes in judgments . . . may be corrected

10

by the court at any time[.]"); *see also Weeks*, ¶¶ 9-10 (directing that mittimus be corrected on remand to reflect that no restitution was owed).

## V. Disposition

¶ 26 Thompson's prison sentences are affirmed. The restitution order is vacated, and the case is remanded to the trial court to correct the mittimus as directed.

JUDGE GOMEZ and JUDGE HAWTHORNE concur.