23CA2243 Peo v Jackson 12-04-2025

COLORADO COURT OF APPEALS

Court of Appeals No. 23CA2243
Mesa County District Court No. 22CR272
Honorable Matthew D. Barrett, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Amber Lynn Jackson,

Defendant-Appellant.

JUDGMENT AFFIRMED

Division VII
Opinion by JUDGE LUM
Tow and Moultrie, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced December 4, 2025

Philip J. Weiser, Attorney General, Trina K. Kissel, Senior Assistant Attorney
General and Assistant Solicitor General, Denver, Colorado, for Plaintiff-Appellee

Christopher Gehring, Alternate Defense Counsel, Denver, Colorado, for
Defendant-Appellant

¶ 1    Defendant, Amber Lynn Jackson, appeals her conviction for drug distribution.  We affirm.

## I.    Background

¶ 2    On February 19, 2022, Colorado State Patrol Trooper Jeffrey Vrbas noticed a driver (Bobbie McGee)[1] performing a "fake yawn," driving in the left lane for several miles without passing another vehicle, and following too closely behind a truck.  He also noticed that Jackson, the passenger, was taking photos through the SUV's front window, even though there didn't appear to be anything interesting about the scenery.  Vrbas initiated a traffic stop, intending to give McGee a warning.

¶ 3    During the traffic stop, Vrbas learned that McGee and Jackson didn't have their names on the rental agreement for the SUV. McGee told Vrbas that she and Jackson were traveling from California to visit motorcycle clubs; however, Jackson didn't have a motorcycle endorsement on her driver's license.  When Vrbas approached Jackson, she appeared to be nervous and fidgety even though Vrbas was merely issuing a warning.

---

[1] McGee is not a party to this appeal.

¶ 4    From the passenger window, Vrbas saw several air fresheners hung throughout the SUV and noticed the smell of "raw marijuana" coming from inside.  After acquiring McGee's consent to search the vehicle, Vrbas noticed fingerprints on the vehicle's spare tire.  When he hit the tire, he heard a thud, which sounded like something was hidden inside.  When he opened the tire, he discovered seven packages of cocaine.

¶ 5    Jackson was charged with possession with intent to manufacture or distribute cocaine, with a special offender sentence enhancer for possession of more than fourteen grams.  A jury found her guilty as charged, and she was sentenced to eighteen years in the custody of the Colorado Department of Corrections.

## II.    Drug Courier Profile Testimony

¶ 6    Jackson argues that the trial court plainly erred by permitting Vrbas to testify that her behavior was consistent with a "drug courier profile."  We conclude that Jackson waived this issue.

## A.    Applicable Law

¶ 7    A drug courier profile is an "array of behaviors and characteristics that detectives believe indicate a person may be smuggling illegal narcotics."  *Salcedo v. People*, 999 P.2d 833, 837

(Colo. 2000). Such testimony is inadmissible as substantive evidence of a defendant's guilt because of the risk that the characteristics described are "entirely subjective" and "personal to" the observer rather than part of an "objective, widely recognized profile." *People v. Gamboa-Jimenez*, 2022 COA 10, ¶ 23. In addition, drug courier profile testimony often relies on behavior and characteristics that aren't unique to drug couriers, making the testimony irrelevant and unfairly prejudicial. *Salcedo*, 999 P.2d at 840-42.

¶ 8 Waiver is an "intentional relinquishment of a known right or privilege" and may be express or implied. *Forgette v. People*, 2023 CO 4, ¶ 28 (quoting *People v. Rediger*, 2018 CO 32, ¶ 39). Waiver extinguishes error and, therefore, appellate review. *Id.* at ¶ 30.

¶ 9 "A waiver . . . may be implied . . . when a party engages in conduct that manifests an intent to relinquish a right or privilege or acts inconsistently with its assertion." *Id.* at ¶ 28. "If there is evidence in the record that defense counsel made a conscious decision to forego raising a claim for strategic or other reasons, we will not hesitate to find an implied waiver." *Phillips v. People*, 2019 CO 72, ¶ 22 n.4; *see also People v. Garcia*, 2024 CO 41M, ¶ 47

(explaining that courts find implied waiver in certain cases to address the concern that a "defendant could intentionally forego objecting to an error 'as a strategic parachute to preserve an avenue of attack on appeal'" (quoting *Stackhouse v. People*, 2015 CO 48, ¶ 16)). For instance, "in some situations defense counsel will refrain from seeking the suppression of an article of evidence for strategic or other reasons." *Phillips*, ¶ 22 n.4. Except in a few circumstances not relevant here, a defendant's personal participation in a waiver isn't required and a defense counsel's statements and conduct may constitute waiver. *Stackhouse*, ¶¶ 15-16.

### B.  Additional Facts

¶ 10    The prosecution called Vrbas to testify about his reasoning for conducting the traffic stop and his search of the SUV. Shortly after Vrbas took the stand, the prosecution asked him to "identify[] the signs of an illegal drug transportation." The court interrupted and precluded Vrbas from testifying that signs of drug trafficking included "air fresheners," "third party cars," and "unusual travel plans," concluding that such testimony would constitute drug courier profiling under *Gamboa-Jimenez* and *Salcedo*. Defense

4

counsel said, "I was about to object" for the same reasons stated by the court. The prosecutor said he would "move on." The court added that it would "be listening carefully" so as not to allow any drug courier profile testimony to be admitted.

¶ 11 Vrbas was then qualified as an expert witness in the fields of transporting illegal narcotics, concealment in motor vehicles, distribution networks, and packaging and value of drugs. As relevant here, he testified about the following topics: (1) McGee's fake yawn and traffic violations; (2) Jackson taking pictures through the front window; (3) Jackson's nervous demeanor during the traffic stop; and (4) the existence of multiple air fresheners in the rental SUV. Defense counsel didn't object to any of the testimony.

¶ 12 After testimony that day, the court noted that it had been paying close attention to the drug courier profile issue and that the testimony "perhaps . . . fl[ew] a bit close to the sun, but it hasn't gotten to the point where [the court] needed to interject, and [the court] ha[s]n't of course heard from [defense counsel] that he believes an objection is warranted, primarily because the testimony hasn't been drug courier profile." Defense counsel didn't dispute

the court's characterization of Vrbas's testimony or raise any further objection.

¶ 13    The next day, the prosecution completed its direct examination of Vrbas, again without any objection from defense counsel. During cross-examination, the defense asked Vrbas about McGee's fake yawn, Jackson's photo taking, and the air fresheners.

¶ 14    Thereafter, the defense made two objections based on concerns about the risk of drug courier profiling. First, during Vrbas's redirect examination, defense counsel objected to the prosecution asking why a fake yawn was concerning as a "change in behavior" and why such behavioral changes may indicate drug smuggling. Second, citing *Gamboa-Jimenez*, defense counsel objected to a juror question inquiring about Vrbas's thought process before conducting the vehicle search. The court sustained both objections.

## C.    Analysis

¶ 15    Jackson contends that the court plainly erred by permitting Vrbas to give drug courier profile testimony when he discussed McGee's fake yawn (or "change in behavior"), Jackson's "nervous" behavior, McGee's statements that she and Jackson were travelling

6

from California, and the use of multiple air fresheners in the SUV. We agree with the People that Jackson impliedly waived any objection to the disputed testimony because the record reflects that defense counsel was aware of the drug courier profile issue but didn't raise it.

¶ 16    First, on the first day of trial, defense counsel clearly heard the court interrupt Vrbas's testimony sua sponte to raise the drug courier profile issue and said that he was "about to object" for the same reason. Despite this awareness, defense counsel permitted Vrbas to testify about the topics he now raises on appeal without further objection. Moreover, counsel didn't raise any issue with Vrbas's direct examination when the court said that it "fl[ew] . . . close to the sun" but it didn't constitute drug courier profiling. *See Garcia*, ¶ 46 ("We have previously been willing to infer an intent to waive when the record demonstrates that counsel was aware of the grounds for an objection but failed to raise it.").

¶ 17    Second, defense counsel cross-examined Vrbas about the fake yawn, Jackson's photography, and the air fresheners found in the SUV. Combined with counsel's awareness of the potential grounds for an objection to such testimony and his choice to object on those

grounds during Vrbas's redirect, it can be fairly assumed that defense counsel wanted to cross-examine Vrbas on these topics and therefore didn't object for strategic reasons. *Phillips*, ¶ 22 n.4.

¶ 18 Because we conclude Jackson impliedly waived the drug courier profile argument, appellate review of this issue is precluded. *Forgette*, ¶¶ 28, 30.

## III. Disposition

¶ 19 The judgment is affirmed.

JUDGE TOW and JUDGE MOULTRIE concur.