2015 COA 25

**The PEOPLE of the State of Colorado, Plaintiff–Appellee,**

**v.**

**Zachariah Clark DOBLER, Defendant–Appellant.**

**Court of Appeals No. 12CA1143**

Colorado Court of Appeals, Div. II.

Announced March 12, 2015

Rehearing Denied April 2, 2015

Cynthia H. Coffman, Attorney General, Rebecca L. Williams, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Douglas K. Wilson, Colorado State Public Defender, Ned R. Jaeckle, Deputy Public Defender, Denver, Colorado, for Defendant–Appellant.

Opinion by JUDGE GRAHAM

¶1 Defendant, Zachariah Clark Dobler, appeals the sentence imposed following his plea of guilty to vehicular homicide and leaving the scene of an accident involving death. We affirm.

I.

¶2 While on probation for a separate felony conviction, defendant, under the influence of alcohol, sped through an accident scene, hitting and killing a tow truck driver. Defendant then fled, only to be apprehended by police several blocks away.

¶3 Defendant pleaded guilty to vehicular homicide and leaving the scene of an accident involving death in exchange for the dismissal of charges of aggravated motor vehicle theft, violation of bail bond conditions, driving under the influence, evading or circumventing an ignition interlock device, reckless driving, and violation of a protective order.

¶4 After an emotional sentencing hearing at which many members of law enforcement who were at the scene of the accident when the victim was killed testified, the sentencing court sentenced defendant to forty-eight years in the custody of the Department of Corrections (DOC), the maximum sentence available under his plea agreement.

II.

¶5 Defendant contends the sentencing judge was biased, depriving him of his constitutional right to have an impartial judge determine his sentence. He argues the following two statements demonstrate the judge was so partial that reversal is required. First, at a hearing on a related matter, the court stated:

> I think you can imagine how I feel about this, [defense counsel]. If I hadn't reconsidered this man's sentence, [the victim] would be alive today, and I can't tell you how that makes a judge feel.

And then, at defendant's sentencing, the court observed:

> [Defendant], I took a chance on you when I reconsidered that sentence. And now a man is dead. And that's something that's going to haunt me, just like this haunts these other people who were at the scene.

We reject the contention.

A.

¶6 Defendant failed to file a motion to disqualify the judge in the district court.

The People argue this failure precludes review of his contention on appeal, while defendant argues this issue may be raised for the first time on appeal because a biased judge cannot preside over a case in which he is prejudiced. *Compare People v. Taylor*, 131 P.3d 1158, 1167 (Colo. App. 2005) (failure to supply affidavits prevented review of defendant's request for disqualification); *People v. Thoro Prods. Co.*, 45 P.3d 737, 747 (Colo. App. 2001) ("Defendants further claim they were relieved of their duty to file a timely motion because the judge had a duty to recuse on his own motion. We reject that claim. To hold otherwise would obviate the time limit completely and encourage litigants to shop for judges."), with *People in Interest of A.G.*, 262 P.3d 646, 651 (Colo. 2011) ("[T]here is no provision to waive disqualification when actual bias is the concern."); § 16–6–201(1)(d), C.R.S. 2014 ("A judge of a court of record shall be disqualified to hear or try a case if ... [h]e is in any way interested or prejudiced with respect to the case, the parties, or counsel."); Crim. P. 21(b)(2) ("Any judge who knows of circumstances which disqualify him in a case shall, on his own motion, disqualify himself."); C.J.C. Canon 3.

¶ 7 We conclude that defendant's contention can only be reviewed for actual bias by the sentencing judge, because his failure to file a motion to disqualify waived his argument that the sentencing judge should have recused himself based on an appearance of partiality. *A.G.*, 262 P.3d at 650 ("Because the concern is the reputation of the judiciary rather than protection of the parties, litigants may waive disqualification when the disqualification is not for reasons of actual bias or prejudice.").[1]

**B.**

¶ 8 We examine whether a judge should have disqualified himself de novo. *People v. Julien*, 47 P.3d 1194, 1197 (Colo. 2002).

¶ 9 "We start with the precept, basic to our system of justice, that a judge must be free of all taint of bias and partiality." *Id.* "Section 16–6–201, Crim. P. 21(b), and Canon 3 set forth Colorado standards by which a judge determines sua sponte or in response to a motion whether to disqualify himself ... from the case." *Id.*

¶ 10 "If a judge has a bias or prejudice that in all probability will prevent him ... from dealing fairly with a party, the judge must not preside over the case." *Id.* "Prejudice ... has been described ... as 'a leaning toward one side of a question involved, from other considerations than those belonging to it, or a bias in relation thereto which would in all probability interfere with fairness in judgment.'" *Smith v. Dist. Court*, 629 P.2d 1055, 1057 (Colo. 1981) (quoting *Walker v. People*, 126 Colo. 135, 146, 248 P.2d 287, 294 (1952)).

¶ 11 Here, defendant was originally sentenced to four years in the DOC by this same judge in an earlier, separate felony case. After defendant completed a year in the DOC, and successfully completed the DOC's boot camp program, the court reviewed his sentence and placed him on intensive supervised probation. While on probation, defendant committed the acts charged in this case. While setting a date for resentencing in the earlier case, the judge remarked "I think you can imagine how I feel about this, [defense counsel]. If I hadn't reconsidered this man's sentence, [the victim] would be alive today, and I can't tell you how that makes a judge

---

1. Defendant argues in his reply brief that he could not have known until sentencing of the judge's bias, and, therefore, he could not raise this issue in the sentencing court. First, we note that defendant was represented by the same public defender in both this case and case number 08CR1501, where, on August 11, 2011, the sentencing court stated to defense counsel "If I hadn't reconsidered this man's sentence, [the victim] would be alive today, and I can't tell you how that makes a judge feel." This statement was made exactly eight months prior to defen-

dant's sentencing in this case on April 11, 2012. Additionally, pursuant to Crim. P. 21(b) and 35(b), defendant could have sought disqualification of the judge after the sentencing hearing alleging "good cause" for not bringing the motion sooner and requesting a reduction in sentence before a new judge. *See People v. Barton*, 121 P.3d 224, 228 (Colo. App. 2004) ("[B]ecause the motion to recuse was triggered by comments the trial judge made at sentencing, we conclude that good cause existed for the late filing.").

feel." Later, during sentencing in the present case, the judge again stated "[Defendant], I took a chance on you when I reconsidered that sentence. And now a man is dead. And that's something that's going to haunt me, just like this haunts these other people who were at the scene." Defendant contends these statements demonstrate a frame of mind that prevented the judge from making a sentencing decision free of prejudice. We draw no such inference.

¶ 12 On the strength of this record, we conclude defendant has not established actual bias requiring disqualification of the sentencing judge. While the judge's statements that he would be "haunt[ed]" by his decision to grant probation showed the judge was affected by his prior decision to be lenient with defendant, it is not enough to establish that the judge was unable to sentence defendant fairly.

¶ 13 In Colorado, "[t]he general rule of law is that what a judge learns in his judicial capacity is a proper basis for judicial observations, and that the use of such information is not the kind of matter that results in disqualification." *Smith*, 629 P.2d at 1057; *see Liteky v. United States*, 510 U.S. 540, 551, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994) ("Also not subject to deprecatory characterizations as 'bias' or 'prejudice' are opinions held by judges as a result of what they learned in earlier proceedings. It has long been regarded as normal and proper for a judge to sit in the same case upon its remand, and to sit in successive trials involving the same defendant."); *see also People v. Boehmer*, 767 P.2d 787, 790 (Colo. App. 1988) ("Neither a judge's expression of opinions derived from his participation in prior proceedings in a pending cause nor his rulings on issues presented in those proceedings are sufficient in themselves to demonstrate disqualifying bias or prejudice.").

¶ 14 Defendant relies on *People v. Barton*, 121 P.3d 224 (Colo. App. 2004), *overruled on other grounds by Lopez v. People*, 113 P.3d 713 (Colo. 2005), and *Del Vecchio v. Illinois Department of Corrections*, 31 F.3d 1363 (7th Cir. 1994), to support his proposition that the judge's expression of remorse established actual bias.

¶ 15 In *Barton*, the defendant pleaded guilty to arson for setting the Hayman fire in Pike National Forest. 121 P.3d at 226. The defendant filed a motion to recuse after she learned that the sentencing judge had been personally affected by the fire. *Id.* at 229. The judge denied the motion and a division of this court reversed. *Id.* at 230.

¶ 16 The division concluded that the motion and affidavits were legally sufficient to create the appearance of prejudice based, in part, on the judge's references to his personal experience of the fire during sentencing. *Id.* However, importantly, the division concluded "that the motion and affidavits here, even if true, indicate no actual prejudice by the trial judge." *Id.* Here, like in *Barton*, the statements by the sentencing judge do not indicate actual prejudice against defendant. And because defendant failed to file a motion to recuse in the trial court, unlike the defendant in *Barton*, we do not review arguments on the appearance of partiality. Therefore, *Barton* does not provide defendant with relief.

¶ 17 In *Del Vecchio*, the defendant had previously pleaded guilty to murder and had received an expedited indictment allowing him to be sentenced as a juvenile. 31 F.3d at 1368. This expedited indictment was approved by the chief of the Cook County State's Attorney criminal division. *Id.* at 1367–68. After completing his juvenile sentence and a subsequent adult sentence for the murder, the defendant was released from prison. *Id.* at 1368.

¶ 18 Several years later, defendant again committed the crime of murder. *Id.* At the time defendant was charged, the chief of the Cook County State's Attorney criminal division had been appointed to the bench as a judge in the Cook County Criminal Division. *Id.* The judge was randomly assigned to the defendant's trial. *Id.* A jury convicted the defendant of murder and the case proceeded to the sentencing phase, where the jury determined the defendant should be put to death. *Id.* at 1369. After exhausting his many state appeals, the defendant sought habeas relief in the federal court arguing, in part, he was denied due process of law be-

cause the judge who sat on his current murder trial had prosecuted him for the earlier murder. *Id.*

¶ 19 After a divided panel of the Seventh Circuit agreed the defendant was entitled to a hearing on a separate issue raised in his habeas petition, the full court vacated the opinion and reheard the case en banc. *Id.* at 1370. On rehearing, a sharply divided court determined the defendant was not entitled to relief under his theory that he was denied a fair trial by the presiding judge. *Id.* The majority concluded that the defendant failed to establish both the appearance of bias and actual bias on the part of the presiding judge. *Id.* at 1370–80.

¶ 20 In the majority's view, before a court may reverse for apparent bias it "must be convinced that a particular influence, 'under a realistic appraisal of psychological tendencies and human weakness,' poses 'such a risk of actual bias or prejudgment that the practice must be forbidden if the guarantee of due process is to be adequately implemented.'" *Id.* at 1375 (quoting *Withrow v. Larkin,* 421 U.S. 35, 47, 95 S.Ct. 1456, 43 L.Ed.2d 712 (1975)). Reviewing the defendant's multiple assertions of impropriety, the majority concluded that the presiding judge—who had no financial interest, was not subject to personally insulting or disrespectful remarks by the defendant, and did not serve the dual role of prosecutor and judge in the same proceeding—did not produce the risk of bias needed to establish disqualification. *Id.* at 1375, 1378.

¶ 21 Addressing actual bias, the majority noted that the presiding judge "admitted that he personally feels betrayed by defendants who commit crimes after he has been lenient when sentencing them." *Id.* at 1379. However, "most sentencing judges probably feel this sense of betrayal; it is a natural emotion, though hardly a disqualifying interest. Taken to its logical conclusion, this 'predisposition' theory would prevent a trial judge from trying and sentencing someone a second time—a common occurrence in our courts which, as the Supreme Court recently noted, does not raise concerns about bias." *Id.* (citing *Liteky,* 510 U.S. at 551, 114 S.Ct. 1147).

¶ 22 In their dissent, four judges of the en banc panel believed the presiding judge's role in the previous murder prosecution was too extensive and required disqualification. *Id.* at 1393 (Cummings, C.J., dissenting).

> The only question is whether these circumstances provided ... an "actual incentive ... for [the presiding judge] to be biased." The answer to this question is obvious. [The presiding judge] made every key decision in the [original] prosecution, including a decision that placed society at risk of [the defendant's] imminent release. This decision directly resulted in [the defendant's] eventual light sentence and early release. When [the defendant] killed again, in a horrifying and senseless fashion, any judge in [the presiding judge's] situation would have felt a strong personal connection to the case.

*Id.* at 1395. Therefore, the dissent concluded "the circumstances of the ... trial presented such a risk of actual bias that [the presiding judge] (under a realistic appraisal of psychological tendencies and human weaknesses) ought not to have presided over it." *Id.* at 1398. However, the dissent also noted that it believed no actual bias was present on the part of the presiding judge. *Id.* (An appearance of bias standard "protects judges such as [the presiding judge]—fine individuals who 'have no actual bias and who would do their very best to weigh the scales of justice equally between contending parties.'" (quoting *Aetna Life Ins. Co. v. Lavoie,* 475 U.S. 813, 825, 106 S.Ct. 1580, 89 L.Ed.2d 823 (1986))).

¶ 23 Like the presiding judge in *Del Vecchio,* here the sentencing judge had no financial interest in the outcome, had never been subject to any personally insulting, abusive, or disrespectful remarks by defendant, and he did not serve the dual role of prosecutor and judge. *Id.* at 1375. Moreover, the judge was not an active participant in any prior prosecution of defendant and only presided over defendant's prior sentencing. *Id.* at 1379, 1395. Consequently, while we understand why defendant seeks to apply *Del Vecchio* to his current circumstances, the case in fact does not provide support for his position.

¶ 24 Rather, this case is far more analogous to the Supreme Court's opinion in *Liteky*, 510 U.S. 540, 114 S.Ct. 1147, relied upon by both the majority and the dissent in *Del Vecchio*.

¶ 25 In *Liteky*, while considering whether the "extrajudicial source" doctrine applied to federal recusal motions, the Court discussed circumstances making it appropriate to disqualify a judge who has previously ruled in a defendant's case. *Id.* at 544–52, 114 S.Ct. 1147. The Court reasoned:

The judge who presides at a trial may, upon completion of the evidence, be exceedingly ill disposed towards the defendant, who has been shown to be a thoroughly reprehensible person. But the judge is not thereby recusable for bias or prejudice, since his knowledge and the opinion it produced were properly and necessarily acquired in the course of the proceedings, and are indeed sometimes (as in a bench trial) necessary to completion of the judge's task. As Judge Jerome Frank pithily put it: "Impartiality is not gullibility. Disinterestedness does not mean child-like innocence. If the judge did not form judgments of the acts in those courthouse dramas called trials, he could never render decisions." *In re J.P. Linahan, Inc.*, 138 F.2d 650, 654 (C.A.2 1943). Also not subject to deprecatory characterizations as "bias" or "prejudice" are opinions held by judges as a result of what they learned in earlier proceedings. It has long been regarded as normal and proper for a judge to sit in the same case upon its remand, and to sit in successive trials involving the same defendant.

*Id.* at 550–51, 114 S.Ct. 1147. Therefore, "opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible." *Id.* at 555, 114 S.Ct. 1147.

¶ 26 Here, the judge's expressed regret does not display a deep-seated antagonism towards defendant. Rather, when read in context, the judge's comment shows regret while considering the possibility for defendant's rehabilitation.

[Defendant], I took a chance on you when I reconsidered that sentence. And now a man is dead. And that's something that's going to haunt me, just like this haunts these other people who were at the scene.

I don't think there's any chance at rehabilitation here.

Whether I can deter this defendant—I don't know. We've tried that before and it didn't work. But I can certainly deter others, or hope to deter others by the sentence I impose here.

First, rehabilitation is an important consideration during sentencing. *See, e.g.,* § 18–1–102.5, C.R.S. 2014 (purpose of code with respect to sentencing); *People v. Fuller*, 791 P.2d 702, 708 (Colo. 1990) ("In exercising sentencing discretion, a trial court must consider the nature of the offense, the character and rehabilitative potential of the offender, the development of respect for the law and the deterrence of crime, and the protection of the public."). Second, "judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge. They *may* do so if they reveal an opinion that derives from an extrajudicial source; and they *will* do so if they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible." *Liteky*, 510 U.S. at 555, 114 S.Ct. 1147. Here, the statement to which defendant objects does not reveal such favoritism or antagonism as to make fair judgment impossible. *See id.* at 556, 114 S.Ct. 1147 ("*Not* establishing bias or partiality, however, are expressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women, even after having been confirmed as federal judges, sometimes display.").

¶ 27 Because the statements defendant relies upon to argue actual bias by the sentencing judge do not display a deep-seated and unequivocal antagonism toward defendant and are based on knowledge learned by the judge having previously passed judgment on

defendant, we perceive no error in the judge passing sentence on defendant under the circumstances here.

## III.

¶ 28 Defendant further contends the sentencing court abused its discretion by imposing the maximum aggravated sentence on each count and ordering the sentences to run consecutively. The People contend defendant is precluded under section 18–1–409(1), C.R.S. 2014, from challenging the propriety of the sentences on appeal. We agree with the People.

¶ 29 Under section 18–1–409(1)

[w]hen sentence is imposed upon any person following a conviction of any felony . . . the person convicted shall have the right to one appellate review of the propriety of the sentence . . . except that, if the sentence is within a range agreed upon by the parties pursuant to a plea agreement, the defendant shall not have the right of appellate review of the propriety of the sentence.

"The plain language of [section] 18–1–409(1) requires an agreement by the parties to a sentencing range." *People v. O'Dell,* 53 P.3d 655, 657 (Colo. App. 2001); *see People v. Scofield,* 74 P.3d 385, 386 (Colo. App. 2002).

¶ 30 Here, defendant seeks to review the propriety of a sentence imposed within the limits for which he bargained. Defendant's petition to enter a plea of guilty states "[t]he parties have agreed that the defendant shall be sentenced to a term of at least 24 years but not more than 48 years in the Department of Corrections." We are unpersuaded by defendant's argument that this petition is an advisement, rather than a plea agreement, and, therefore, defendant's sentence is exempt from the application of section 18–1–409(1). It is clear from the record that the "petition to enter plea agreement" is, in fact, a signed plea agreement between defendant and the prosecution. *See Scofield,* 74 P.3d at 387 (no review of the defendant's sentence because it was agreed upon); *cf. O'Dell,* 53 P.3d at 657 (reviewing the defendant's sentence after pleading guilty because "there is no indication in the record that his plea agreement included any type of agreed sentencing range or cap"). Indeed, the record further demonstrates that defendant agreed to this sentencing range because during his sentencing hearing defense counsel argued:

> Your Honor, in a case such as this, particularly when *we have a stipulated sentencing range* like the Court has before it today, there's really not a whole lot that I think anybody can say or do to improve the situation.
>
> . . . .
>
> And that even if the Court were to give him the minimum *in the range that we've agreed to,* that he's going to be in prison for very, very long time.
>
> . . . .
>
> I would ask the Court to sentence [defendant] to the Department of Corrections, but for the minimum term *in the range that we've agreed to.* Even the minimum term, as I stated, is an extremely long sentence. It's a sentence that is longer than many other sentences in similar cases that we've seen, both in this jurisdiction and in other jurisdictions.

(Emphasis added.) Because the sentence imposed was "within a range agreed upon by the parties pursuant to a plea agreement," defendant is precluded from challenging the propriety of his sentence on appeal. *See* § 18–1–409(1); *Scofield,* 74 P.3d at 387.

## IV.

¶ 31 The sentence is affirmed.

JUDGE CASEBOLT and JUDGE DUNN concur.