The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader. The summaries may not be cited or relied upon as they are not the official language of the division. Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
July 28, 2022

**2022COA83**

**No. 19CA1629, *People v. Garcia* — Criminal Law — Disqualification of a Judge — Structural Error**

A division of the court of appeals holds as a matter of first impression that it is structural error for a statutorily disqualified judge to preside over a case.

COLORADO COURT OF APPEALS        **2022COA83**

Court of Appeals No. 19CA1629
Sagauche County District Court No. 17CR27
Honorable Amanda C. Hopkins, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Donald L. Garcia,

Defendant-Appellant.

JUDGMENT REVERSED AND CASE
REMANDED WITH DIRECTIONS

Division I
Opinion by JUDGE TOW
Berger, J., concurs
Dailey, J., concurs in part and dissents in part

Announced July 28, 2022

Philip J. Weiser, Attorney General, Brittany Limes Zehner, Assistant Solicitor
General, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Jacob B. McMahon, Deputy
State Public Defender, Denver, Colorado, for Defendant-Appellant

¶ 1    Defendant, Donald L. Garcia, appeals the judgment of conviction entered on a jury verdict finding him guilty of first degree aggravated motor vehicle theft.  This appeal requires us to consider whether the fact that the judge who presided over the trial was statutorily disqualified from doing so because of her prior involvement in the case as counsel for defendant amounts to structural error.  We conclude that it does and therefore reverse the judgment of conviction.  Because we reject Garcia's challenge to the sufficiency of the evidence underlying the conviction, we remand for a new trial before a different judge.

I.    Factual Background

¶ 2    Garcia took his employer's truck without his permission and drove it off the road and across a drainage ditch, where it broke down.  The next morning, Garcia had a friend help him tow the damaged truck back to his employer's shop.  The estimated repair cost was $11,579.15.

¶ 3    Garcia was charged with first degree aggravated motor vehicle theft on July 24, 2017.  He was represented by Kate Mattern of the State Public Defender's Office.  On April 17, 2018, Amanda Hopkins, then a Deputy State Public Defender, appeared on behalf

1

of Garcia at a pretrial readiness conference at which he failed to appear. As both parties concede, Judge Hopkins was appointed to the district court bench on July 10, 2018. Judge Hopkins then presided over the remainder of Garcia's case, including all pretrial hearings, the trial, and sentencing.

## II.     Disqualification of the Judge

### A.     Standard of Review and Applicable Law

¶ 4     We review de novo whether Judge Hopkins should have disqualified herself. *See People v. Julien*, 47 P.3d 1194, 1197 (Colo. 2002).

¶ 5     "A judge of a court of record shall be disqualified to hear or try a case if . . . [sh]e has been of counsel in the case." § 16-6-201(1)(c), C.R.S. 2021. Judge Hopkins appeared as counsel for Garcia at the pretrial readiness conference and was therefore required to disqualify herself. *See id.* Her minimal level of representation at the hearing does not change our conclusion. Applying *Julien* to the defense context, "a judge must disqualify . . . herself sua sponte . . . if facts exist tying the judge to . . . *some role* in the [defense] of the case during the judge's former employment." 47 P.3d at 1198 (emphasis added). And if a judge "personally

2

participated in the [defense] of [the] case *in any way,*" she is disqualified from serving as a judge in the case. *See id.* at 1200 (emphasis added). Because Judge Hopkins had "some role" in the defense of the case and personally participated "in any way" in Garcia's defense, she erred by not disqualifying herself.[1] *See* § 16-6-201(1)(c). Notably, neither party appears to assert that Judge Hopkins's appearance and minimal participation in the case does not amount to her having "been of counsel" in the matter. *See id.*

¶ 6    Further, we conclude that when a statutorily disqualified judge presides over a case, it is structural error.

---

[1] That being said, we intend no condemnation of Judge Hopkins. The record reflects that she was not Garcia's assigned counsel and had filed no written entry of appearance. She appeared only at one court date, which was a pretrial readiness conference approximately one month before the then-scheduled trial date. It is not clear that Judge Hopkins ever met Garcia, as he failed to appear with her at the conference. And the minute order did not reflect Judge Hopkins's appearance. Finally, although the transcript from the April hearing clearly shows Judge Hopkins's appearance, there is no reason that, at that stage of the proceedings, either party or the court would have had the transcript prepared from a hearing at which Garcia failed to appear. Indeed, it appears the transcript was not prepared until the appellate record was being compiled. Thus, from this record, it is not surprising that Judge Hopkins would not have recognized her prior involvement in the case.

¶ 7        In *People v. Abu-Nantambu-El*, 2019 CO 106, ¶ 39, our supreme court held that when a potential juror who is statutorily disqualified from serving pursuant to section 16-10-103(1), C.R.S. 2021, nevertheless serves on the jury, it is structural error.  This is so, the supreme court said, because such potential jurors "are conclusively presumed by law to be biased." *Abu-Nantambu-El*, ¶ 32.

¶ 8        In this respect, section 16-6-201 is analogous to section 16-10-103, in that it conclusively presumes that a judge who previously served in the case as counsel is biased.  No actual enmity toward either side is required.[2]  We see no logical distinction to be made between a statutorily disqualified juror and a statutorily disqualified judge.  *See id.* at ¶ 27 (noting that the Sixth Amendment guarantees the "right to 'an impartial adjudicator, be it judge or jury'" (quoting *Gray v. Mississippi*, 481 U.S. 648, 668 (1987))).

---

[2] Nothing in the record suggests Judge Hopkins was actually biased against Garcia.

¶ 9    Because Judge Hopkins was presumed by statute to be biased, Garcia's trial was "before a biased judge," which is structural error.  *See Hagos v. People*, 2012 CO 63, ¶ 10.

### B.    Waiver

¶ 10    We also reject the People's contention that Garcia waived this claim.

¶ 11    Waiver is "the *intentional* relinquishment of a *known* right or privilege."  *People v. Rediger*, 2018 CO 32, ¶ 39 (quoting *Dep't of Health v. Donahue*, 690 P.2d 243, 247 (Colo. 1984)).  Just as nothing in the record made Judge Hopkins's prior involvement in the case obvious to her, nothing made it obvious to Garcia or his attorneys.  Again, the minute order in the court file did not reflect Judge Hopkins's appearance at the April hearing, and there is no reason to believe anyone had a transcript of that hearing prior to trial.  The brief and nonsubstantive hearing at which Judge Hopkins appeared occurred three months before Judge Hopkins's appointment.  Defendant did not appear in court on this case for five months after Judge Hopkins's sole appearance on his behalf.  The Deputy State Public Defender who handled the case between the date Judge Hopkins appeared and the trial was John Hoag, not

Mattern (though Mattern rejoined Hoag as co-counsel at the trial, which was over a year after Judge Hopkins's appearance). Thus, it is not clear from the record that Garcia's attorneys recalled that Judge Hopkins had previously appeared in the case.

¶ 12    Finally, we do not share the People's concern that this could lead to gamesmanship. The prosecutor had the same opportunity to raise the issue as did Garcia. *See Abu-Nantambu-El*, ¶ 38.

¶ 13    In sum, nothing in the record suggests that Mattern, Hoag, or Garcia was aware of Judge Hopkins's prior involvement in the case, either at the time of the judge's assignment to the case or at the time of trial. Thus, we discern no waiver.[3] Accordingly, we must reverse the judgment of conviction.

### III.   Sufficiency of the Evidence

¶ 14    Garcia also challenges the sufficiency of the evidence to convict him of first degree aggravated motor vehicle theft. Because retrial on this charge would be barred if this contention is

---

[3] Because we conclude that neither Garcia's nor his attorneys' silence waived Judge Hopkins's disqualification, we need not address Garcia's argument that section 13-1-122, C.R.S. 2021, requires that any consent to Judge Hopkins presiding over the case must be on the record and come from Garcia personally, rather than his counsel.

meritorious, we must address the issue.  In doing so, however, we conclude that the evidence was sufficient.

## A.  Standard of Review

¶ 15    Both parties assert that we review sufficiency of the evidence claims de novo.  We agree, to a point.  Both our supreme court and divisions of this court have occasionally referred to the review of a sufficiency of the evidence challenge as a "de novo review."  *See, e.g., People v. Vidauri*, 2021 CO 25, ¶ 10; *People in Interest of K.D.W.*, 2020 COA 110, ¶ 37.  However, this increasingly used shorthand reference can be a bit misleading.

¶ 16    The original, and more complete, recitation of the standard is that "[w]e review the record de novo to determine whether the evidence before the jury was sufficient both in quantity and quality to sustain the convictions."  *Dempsey v. People*, 117 P.3d 800, 807 (Colo. 2005).  We view the evidence as a whole and in the light most favorable to the prosecution to determine whether the evidence was "sufficient to support the conclusion by a reasonable mind that the defendant was guilty beyond a reasonable doubt."  *People v. Griego*, 2018 CO 5, ¶ 24.  In doing so, we give the prosecution "the benefit of every reasonable inference which might be fairly drawn from the

evidence." *People v. Perez*, 2016 CO 12, ¶ 25 (quoting *People v. Gonzales*, 666 P.2d 123, 128 (Colo. 1983)).  But, as the supreme court has recently reiterated, in conducting this review, we "'may not serve as a thirteenth juror' by considering whether we 'might have reached a different conclusion than the jury.'  Nor may we invade the jury's province by second-guessing any findings that are supported by the evidence."  *Thomas v. People*, 2021 CO 84, ¶ 10 (quoting *People v. Harrison*, 2020 CO 57, ¶ 33).[4]  Put another way, what we review de novo is not the ultimate conclusion of guilt by the fact finder but, rather, whether the prosecution put forward sufficient evidence to "[meet] its burden of proof with respect to each element of the crime charged."  *Martinez v. People*, 2015 CO 16, ¶ 22.  And the prosecution fails to meet this burden "[i]f the evidence is such that reasonable jurors must necessarily have a reasonable doubt."  *Clark v. People*, 232 P.3d 1287, 1292 (Colo.

---

[4] These limitations make it clear that our review is not truly de novo, or "*anew.*"  *See Carousel Farms Metro. Dist. v. Woodcrest Homes, Inc.*, 2019 CO 51, ¶ 19 ("Without the ability to make factual findings, it's unclear how an appellate court could review factual determinations 'anew.'" (citing Black's Law Dictionary (10th ed. 2014))).  Indeed, were we to truly review the evidence de novo, we *would* sit as a thirteenth juror and *would* be permitted to simply weigh the evidence differently.

2010) (citing *People v. Bennett,* 183 Colo. 125, 132, 515 P.2d 466, 470 (1973)).

## B.   Applicable Law

> A person commits aggravated motor vehicle theft in the first degree if he or she knowingly obtains or exercises control over the motor vehicle of another without authorization or by threat or deception and . . . [c]auses five hundred dollars or more property damage, including but not limited to property damage to the motor vehicle involved, in the course of obtaining control over or in the exercise of control of the motor vehicle.

§ 18-4-409(2)(e), C.R.S. 2021.  "A person acts 'knowingly' . . . with respect to a result of his conduct, when he is aware that his conduct is practically certain to cause the result."  § 18-1-501(6), C.R.S. 2021.

## C.   Analysis

¶ 17      We disagree with Garcia that the evidence was insufficient to show that he knowingly caused damage to the truck because there was no evidence addressing the manner in which he drove the vehicle.

¶ 18      Initially, we note that it is unclear whether the People were required to prove that Garcia "knowingly" caused damage to the

truck.  "When a statute defining an offense prescribes as an element thereof a specified culpable mental state, that mental state is deemed to apply to every element of the offense unless an intent to limit its application clearly appears."  § 18-1-503(4), C.R.S. 2021.  However, proof that Garcia caused damage to the truck is a sentence enhancer, not an element.  *See People v. Poindexter*, 2013 COA 93, ¶ 82 n.2.  The mental state does not necessarily apply to sentence enhancers.  *See Garcia v. People*, 2019 CO 64, ¶¶ 34-38.  Because the People do not argue this point, however, we will assume without deciding that the People were required to prove that Garcia knowingly caused damage to the truck.

¶ 19     The jury heard the following testimony:

- The truck had a bent axle and tire, missing side rails, broken levers on the steering column, and bent toolboxes hanging beneath the truck bed.

- To retrieve the truck Garcia and his friend "turned left off into the sagebrush and down a couple of draws and then turned up in a specific draw."

- "You could see where [Garcia] plowed through some little bumps."

- Garcia admitted that he "wrecked" the truck and that he "screwed up."

¶ 20    We conclude that the jury could reasonably infer from this evidence that this was not an accident but, instead, that Garcia knowingly drove the truck over rough terrain for a considerable distance and knew that his conduct was practically certain to damage the truck. Accordingly, the prosecution presented sufficient evidence of first degree aggravated motor vehicle theft.

## IV.   Disposition

¶ 21    We reverse the judgment of conviction and remand for a new trial on the original charge before a different judge.

JUDGE BERGER concurs.

JUDGE DAILEY concurs in part and dissents in part.

11

JUDGE DAILEY, concurring in part and dissenting in part.

¶ 22     I agree with the majority's sufficiency of evidence analysis. But, for the following reasons, I would not reverse on structural error grounds.

¶ 23     As the majority points out, Garcia did not object to his former attorney presiding over the case upon that attorney's appointment to the bench.  In my view, Garcia waived any claim that the judge should have disqualified herself.

¶ 24     Initially, I assume, without deciding, that even though no actual bias on Judge Hopkins's part has been shown, it is nevertheless structural error for a statutorily disqualified (i.e., *impliedly* biased) judge to preside over a trial.  *Cf. People v. Abu-Nantambu-El*, 2019 CO 106, ¶ 39 (holding that it was structural error for a statutorily disqualified juror to sit on a jury because, even though no actual bias was shown, the bias was implied as a matter of law).

¶ 25     But "even fundamental rights can be waived, regardless of whether the deprivation thereof would otherwise constitute structural error."  *Stackhouse v. People*, 2015 CO 48, ¶ 8.  Waiver is "the *intentional* relinquishment of a *known* right or privilege."

12

*People v. Rediger*, 2018 CO 32, ¶ 39 (quoting *Dep't of Health v. Donahue*, 690 P.2d 243, 247 (Colo. 1984)). We review de novo whether there was a waiver. *See Bondsteel v. People*, 2019 CO 26, ¶ 21.

¶ 26 A defendant who seeks to disqualify a judge must file a motion within fourteen days of the case being assigned to that judge, unless good cause is shown. Crim. P. 21(b)(1); *see People v. Dist. Ct.*, 192 Colo. 503, 507, 560 P.2d 828, 831 (1977) (holding that Crim. P. 21(b) has uniformly been applied in disqualification cases and that the time requirements in Crim. P. 21(b) apply whether the movant expressly invokes that rule or "purports to proceed only under section 16-6-201"). Unless the basis for disqualification is actual bias, failure to timely request a substitution of judge waives any claim that the judge should have recused herself. *People v. Dobler*, 2015 COA 25, ¶ 7.

¶ 27 Although the statute deems Judge Hopkins to be *impliedly* biased, it is not a statutory declaration that she is *actually* biased. True, our supreme court in *Abu-Nantambu-El* said that a *juror* who is deemed by statute to be biased "is legally indistinguishable from an actually biased juror." *Abu-Nantambu-El*, ¶ 2. However, that

13

statement was in the context of whether service by such a juror would be treated as structural error. *Id.* The supreme court explicitly acknowledged that failure to raise the statutory disqualification would result in the issue not being preserved for appeal. *Id.* at ¶ 37. Thus, unlike actual bias, disqualification based on implied bias can be waived.

¶ 28 In my view, it defies logic to suggest that the deputy state public defenders representing Garcia at trial would not have known that Judge Hopkins had appeared at the April hearing. Indeed, Mattern was the attorney of record both at that time of Judge Hopkins's single appearance in the matter and at trial. To suggest that she did not know who appeared on her behalf assumes a level of disregard for her cases that I am simply not willing to believe a competent defense attorney would display. Not raising the issue once Judge Hopkins had been appointed to the bench and assigned the case qualifies, in my view, as an intentional relinquishment of a known right.[1]

---

[1] It does not take a significant leap to imagine the possible strategic value of not seeking the disqualification of a judge whom, in light of her prior position, defense counsel may consider preferable to other judges in the district.

¶ 29    Further, I disagree with Garcia that Judge Hopkins lacked the authority to act under section 13-1-122, C.R.S. 2021, which provides that "[a] judge shall not act as such in any of the following cases: . . . when [s]he has been attorney or counsel for either party in the action or proceeding, unless by consent of all parties to the action."  In *Kerr v. Burns*, 42 Colo. 285, 290, 93 P. 1120, 1122 (1908), the supreme court noted that the argument that the "decree was void because the presiding judge was counsel for one of the parties at the inception of that proceeding" did "not go to jurisdiction over the subject-matter."  Garcia's argument is therefore merely another disqualification argument.  And by not objecting, the parties consented to Judge Hopkins presiding over the case.  *See id.* at 291, 93 P. at 1122 (concluding that the parties' failure to object during the proceedings was "acquiescence that must be held equivalent to an affirmative consent").

¶ 30    Because Garcia waived any challenge to Judge Hopkins's failure to disqualify herself based on an appearance of impropriety or implied bias, I would reject this as a ground for reversal.

15