22CA0077 Peo v Cohen 07-11-2024 COLORADO COURT OF APPEALS Court of Appeals No. 22CA0077 Boulder County District Court No. 14CR437 Honorable Andrew Hartman, Judge The People of the State of Colorado, Plaintiff-Appellee, v. Emily Elizabeth Cohen, Defendant-Appellant. JUDGMENT AFFIRMED Division V Opinion by JUDGE BROWN Harris and Lum, JJ., concur NOT PUBLISHED PURSUANT TO C.A.R. 35(e) Announced July 11, 2024 Philip J. Weiser, Attorney General, William G. Kozeliski, Senior Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee Suzan Trinh Almony, Alternate Defense Counsel, Broomfield, Colorado, for Defendant-Appellant
1 ¶ 1 Defendant, Emily Elizabeth Cohen, directly appeals the judgment of conviction entered after she pleaded guilty to one count of theft, collaterally attacking her guilty plea on two grounds. First, Cohen contends that the district court judge who accepted her guilty plea was biased, so the conviction entered on her plea must be reversed. We conclude that the record fails to demonstrate that the judge was actually biased, so reversal is not required. See People In Interest of A.P., 2022 CO 24, ¶ 29 (“Only when a judge was actually biased will we question the reliability of the proceeding’s result.”). ¶ 2 Second, Cohen contends that the district court erroneously and totally deprived her of her right to counsel before trial, so her uncounseled guilty plea was not knowing or intelligent. We first conclude that, by pleading guilty, Cohen waived her right to challenge on appeal the alleged deprivation of counsel. See Stackhouse v. People, 2015 CO 48, ¶ 8 (“[E]ven fundamental rights can be waived, regardless of whether the deprivation thereof would otherwise constitute structural error.”); Neuhaus v. People, 2012 CO 65, ¶ 8 (to preserve appellate review of constitutional challenges to pretrial proceedings, a defendant must not plead guilty). We then 
2 conclude that Cohen’s attack on the validity of her guilty plea requires factual development and must be brought in a postconviction motion. See People v. Kirk, 221 P.3d 63, 65 (Colo. App. 2009) (collateral attack on plea requiring resolution of factual issues ordinarily must be raised in a Crim. P. 35(c) motion); cf. Moore v. People, 2014 CO 8, ¶ 16 (a defendant may only challenge the knowing, voluntary, and intelligent waiver of the right to testify in a postconviction proceeding). I. Background ¶ 3 Cohen previously practiced as an immigration attorney. The People alleged that Cohen requested payment in advance for her services and that once Cohen received money to work on a case, she broke off all contact, failed to do the work she had agreed to do, and refused to provide refunds to her clients. In 2014, the prosecution charged Cohen with fifty-four counts of theft, ranging from class 2 misdemeanors to class 4 felonies. In 2015, a jury convicted Cohen of some of the charges. ¶ 4 Cohen appealed, and a division of this court reversed her convictions for an evidentiary error and remanded for a new trial. See People v. Cohen, 2019 COA 38, ¶ 44. On remand, Cohen 
3 pleaded guilty to one count of theft in exchange for the dismissal of the remaining counts, and the district court sentenced her to time served. II. Actual Bias ¶ 5 Cohen contends that Judge Andrew Hartman, the district court judge who presided over the entry of her guilty plea, was actually biased, so “the guilty plea he accepted in this case is not valid.” We are not persuaded.
1 A. Generally Applicable Law and Standard of Review ¶ 6 “Basic to our system of justice is the principle that a judge must be free of all taint of bias and partiality.” People v. Jennings, 2021 COA 112, ¶ 18 (citing People v. Mentzer, 2020 COA 91, ¶ 5). A judge may not preside over a case if they are unable to be impartial. 1 We understand Cohen’s argument to be that Judge Hartman was actually biased. But to the extent Cohen argues that Judge Hartman was statutorily disqualified based on section 16-6-
201(1)(d), C.R.S. 2023; Crim. P. 21(b)(1)(IV); or Code of Judicial Conduct 2.11(A)(1), she waived her right to raise these challenges by failing to object in the district court and by pleading guilty. See People v. Garcia, 2024 CO 41M, ¶ 46 (litigants waive statutory disqualification “when a party knows of grounds for disqualification” but fails to file a motion until after an adverse ruling (quoting People in Interest of A.G., 262 P.3d 646, 652 (Colo. 2011))); Neuhaus v. People, 2012 CO 65, ¶ 8 (a guilty plea generally precludes appellate review of issues that arose before the plea). 
4 A.P., ¶ 25. Whether a judge should recuse from a case “depends entirely on the impropriety or potential appearance of impropriety caused by [their] involvement.” Id. at ¶ 26. ¶ 7 But there is a difference between a judge who has the appearance of impropriety and one who has actual bias. Jennings, ¶ 18. Colorado’s Code of Judicial Conduct requires a judge to recuse from “any proceeding in which the judge’s impartiality might reasonably be questioned” — in other words, when their involvement in a case might create the appearance of impropriety. A.P., ¶ 27 (quoting People in Interest of A.G., 262 P.3d 646, 650 (Colo. 2011)). ¶ 8 Actual bias, on the other hand, “exists when, in all probability, a judge will be unable to deal fairly with a party; it focuses on the judge’s subjective motivations.” Id. at ¶ 28. “A defendant asserting bias on the part of a trial judge must establish that the judge had a substantial bent of mind against” them. People v. Drake, 748 P.2d 1237, 1249 (Colo. 1988). Such bias must be established clearly in the record; mere speculative statements and conclusions are not enough. Id. 
5 ¶ 9 Circumstances creating an appearance of impropriety warranting recusal do not alone demonstrate that a judge was actually biased. A.P., ¶ 29. And although “both an appearance of impropriety and actual bias are grounds for recusal from a case, only when the judge was actually biased will we question the result.” Id. ¶ 10 Whether a trial judge should have recused is a question of law that we review de novo. Sanders v. People, 2024 CO 33, ¶ 25. If an actually biased judge presides over a trial, it is structural error. People v. Garcia, 2024 CO 41M, ¶ 21. Claims of actual bias may not be waived and may be reviewed on appeal even if the defendant fails to properly raise the issue in the trial court. Jennings, ¶ 21. B. Additional Background ¶ 11 On July 14, 2021, despite having been ordered to appear in person “on at least three occasions” and as a condition of bond, Cohen appeared at a pretrial conference by Webex and represented that she had tested positive for COVID-19. The district court ruled that by appearing virtually, Cohen had failed to appear and violated her bond conditions. The court recounted Cohen’s “history of hiding behind supposed medical ailments to avoid appearing in 
6 court.” It determined there was probable cause that Cohen was in direct contempt of the court and issued a warrant for her arrest. ¶ 12 Two days later, Cohen filed a motion to reconsider and attached a letter from Caroline Marcotte, an advanced registered nurse practitioner at the University of Iowa Hospitals and Clinics, stating that Cohen “was told she is a Covid-positive patient” and must remain quarantined at home. The court denied the motion. ¶ 13 Two weeks later, Cohen filed a motion to quash the warrant and attached a letter from Maddie Ferguson, a certified physician assistant at the University of Iowa Hospitals and Clinics, stating that Cohen had tested positive for COVID-19 on July 13, was still infectious, and was ordered to stay home. The court granted the motion to quash and allowed Cohen to appear virtually for an August 9 hearing. After that hearing, the court ordered Cohen to appear in person for a November 2 pretrial hearing. It also ordered that, if Cohen sought to appear remotely at any future hearings because of COVID-19, the court would only find good cause to allow Cohen’s remote appearance if she provided an official COVID-19 test result in advance. 
7 ¶ 14 The day before the November 2 pretrial hearing, Cohen filed a motion to dismiss her case on several grounds and attached a letter from Dr. Jessica Alston of the University of Iowa Hospitals and Clinics, stating that Cohen had tested positive for COVID-19 on October 28, was still infectious, and was ordered to stay home. Cohen told the court she would appear remotely the following day. ¶ 15 At the hearing, the prosecution said it had been skeptical of the letters Cohen had submitted and had contacted the University of Iowa Hospitals and Clinics to verify if the letter from Dr. Alston was valid. The prosecution offered as an exhibit an email between its investigator and a nurse at the University of Iowa, which confirmed that Dr. Alston had not written the letter. The court found probable cause “that the document is forged and not a legitimate doctor’s note.” On the prosecution’s request, the court revoked Cohen’s bond and issued another warrant for her arrest, both because she failed to appear in violation of the court’s orders and based on its conclusion that probable cause existed that the documents Cohen submitted were fraudulent. ¶ 16 Cohen was arrested on the warrant and because she challenged extradition and remained in custody in Iowa, she 
8 appeared via Webex in court for a status conference on November 23. At that status conference, the prosecution informed the court and Cohen that it had filed “new charges related to the attempt to influence” and “forgery charges” based on the COVID-19 documents. ¶ 17 On the morning of December 6, the first day of the scheduled trial in the theft case, Judge Hartman let the parties know that he had arranged for a different judge to advise Cohen on the attempt to influence and forgery charges “in an abundance of caution in case [he] ever had to be a witness” in that case. Judge Hartman asked whether there was a possibility of reaching a disposition of the theft case and both parties expressed interest in exploring one. The parties returned and reported they had reached a plea agreement on the theft case. Judge Hartman advised Cohen of her rights if she entered a plea and then took a recess. ¶ 18 While the prosecution was finalizing the plea paperwork, Judge Langer advised Cohen of her rights on the attempt to influence case “since, theoretically, Judge Hartman, I guess, could be a witness.” After the advisement, Judge Langer asked if Judge 
9 Hartman was going to take the plea in the theft case, and Cohen responded affirmatively. ¶ 19 Judge Hartman returned to preside over Cohen’s entry of a guilty plea to a single felony count of theft. Judge Hartman sentenced Cohen to ninety days jail with ninety days credit for time served, as agreed by the parties. C. Judge Hartman Did Not Have Actual Bias ¶ 20 Cohen contends that Judge Hartman had actual bias justifying automatic reversal of the conviction entered on her guilty plea because (1) he was the named victim in the attempt to influence case, which arose from the proceedings in the theft case; and (2) he had a “substantial bent of mind” against her as evidenced in his rulings and case management. 1. Named Victim in Attempt to Influence Case ¶ 21 Although the appellate record in the theft case does not include the complaint filed in the attempt to influence case, we may take judicial notice of court records in a related proceeding. See CRE 201(b)(2); People v. Sa’ra, 117 P.3d 51, 56 (Colo. App. 2004). Indeed, the People charged Cohen with three counts of attempt to influence a public servant identifying Judge Hartman as the “public 
10 servant” and three counts of forgery identifying Judge Hartman as the person Cohen intended to defraud. Still, for four reasons, we are not persuaded that Judge Hartman’s relationship to the attempt to influence case amounts to him having actual bias against Cohen in the theft case. ¶ 22 First, nothing in the record suggests that Judge Hartman directed the prosecution to investigate any charges that might arise from Cohen’s submission of the COVID-19 documents or requested that the prosecution file charges. Cf. In re Estate of Elliott, 993 P.2d 474, 482 (Colo. 2000) (Substitution was proper where the judge “appeared personally involved in the controversy and had prejudged the case, but also because the judge referred the case to the district attorney for potential criminal prosecution.”). ¶ 23 Second, Judge Hartman did not have a direct, personal, substantial, or pecuniary interest in the theft case. See Sanders, ¶ 31 (Recusal is not required “whenever a party can assert some objective probability of bias” but “only in circumstances involving a direct, personal, substantial, or pecuniary interest.”). True, Judge Hartman had an interest as a named victim and potential witness in the attempt to influence case from which he recused, but that 
11 interest did not require his disqualification from the theft case. See People v. Schupper, 2014 COA 80M, ¶¶ 63-64 (disqualification of a judge who witnessed perjury in his courtroom was not necessary where the perjury case was transferred to another judicial officer, and the judge “was not a material witness in the proceeding he was currently handling”). At most, Judge Hartman’s relationship to the attempt to influence case could give rise to an appearance of impropriety in the theft case, a claim which Cohen can and did waive through entry of her guilty plea.
2 See A.G., 262 P.3d at 650 (“[L]itigants may waive disqualification when the disqualification is not for reasons of actual bias or prejudice.”). ¶ 24 Third, it is well-settled that “what a judge learns in his judicial capacity is a proper basis for judicial observations, and that the use of such information is not the kind of matter that results in disqualification.” People v. Dobler, 2015 COA 25, ¶ 13 (quoting Smith v. Dist. Ct., 629 P.2d 1055, 1057 (Colo. 1981)); see also Liteky v. United States, 510 U.S. 540, 555 (1994) (“[O]pinions formed by the judge on the basis of facts introduced or events occurring in the 2 To be clear, we do not conclude that these circumstances in fact gave rise to an appearance of impropriety. 
12 course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible.”). If we required a judge to disqualify based on information learned in their capacity as a judge, “an unscrupulous defendant could manipulate such a ruling to [their] advantage” and delay proceedings indefinitely. People v. Ramos, 708 P.2d 1347, 1352-53 (Colo. 1985). ¶ 25 Judge Hartman learned of the conduct giving rise to the attempt to influence case in his judicial capacity because Cohen submitted allegedly fraudulent documents in the theft proceedings. And in our view, the record dispels the notion that Judge Hartman was influenced in any way by Cohen’s conduct. The rulings to which Cohen points as evidence of a “substantial bent of mind,” which we address next, do not reflect any strong feelings toward or against any party. And Cohen points to nothing else in the record to support her claim. ¶ 26 Fourth, the type of conduct at issue here — submitting allegedly forged documents to a judge to excuse a nonappearance — is not so outrageous “that in all probability [it] will prevent [a judge] 
13 from dealing fairly with a party.” Jennings, ¶ 20 (quoting A.G., 262 P.3d at 650). As fact finder, a trial court routinely assesses witness credibility and determines whether and how much weight to give conflicting evidence. Schupper, ¶ 27. ¶ 27 By comparison, a division of this court rejected a claim that a judge had actual bias when sentencing a defendant on arson charges arising from a fire, even though the judge personally witnessed the fire, was forced to evacuate his home, knew of friends and staff who similarly had to evacuate their homes, and assisted in relief efforts afterward. See People v. Barton, 121 P.3d 224, 229-30 (Colo. App. 2004) (concluding that the facts gave rise only to an appearance of prejudice), overruled on other grounds by Lopez v. People, 113 P.3d 713 (Colo. 2005). If a judge being forced to evacuate his home to avoid a fire does not give rise to actual bias in a proceeding to prosecute a defendant for setting the fire, we cannot conclude that a judge receiving allegedly false information from a defendant to excuse a failure to appear constitutes actual bias. ¶ 28 That Judge Hartman witnessed the conduct underlying Cohen’s attempt to influence and forgery charges and was named a victim of those crimes in a separate proceeding did not give rise to 
14 actual bias in the theft case. Accordingly, we conclude that reversal is not required. See A.P., ¶ 29. 2. Rulings and Case Management ¶ 29 We are also not persuaded that Judge Hartman’s rulings or case management reflect a “substantial bent of mind” against Cohen. To be sure, a judge’s adverse rulings, without more, are insufficient to establish actual bias. Bocian v. Owners Ins. Co., 2020 COA 98, ¶ 57 (“Unless accompanied by an attitude of hostility or ill will toward a party, a ruling by a judge on a legal issue is insufficient to show bias that requires disqualification.” (citing Brewster v. Dist. Ct., 811 P.2d 812, 814 (Colo. 1991))); Saucerman v. Saucerman, 170 Colo. 318, 326, 461 P.2d 18, 22 (1969) (“[R]ulings of a judge,” even if “erroneous, numerous and continuous, are not sufficient in themselves to show bias or prejudice.”). Even remarks that are “critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not” establish bias, unless they reveal an opinion that derives from an extrajudicial source or reflect “such a high degree of favoritism or antagonism as to make fair judgment impossible.” Dobler, ¶ 26 (quoting Liteky, 510 U.S. at 555). 
15 ¶ 30 To support her claim, Cohen points to the following: • Judge Hartman ruled that Cohen had failed to appear at the November 2 hearing even though she appeared by Webex. But given that Cohen had been ordered repeatedly to appear in person and then submitted allegedly falsified documents to justify her remote appearance, it was reasonable for Judge Hartman to find that Cohen failed to appear and to issue a warrant for her arrest. • Judge Hartman “deprived [Cohen] of her constitutional right to counsel for entry of the guilty plea, despite her repeated requests for appointment of counsel.” See infra Part III.A. Even if Judge Hartman erred by denying Cohen counsel, a conclusion we do not reach, an erroneous ruling alone does not reflect bias or prejudice. See Schupper, ¶ 58. • Judge Hartman gave Cohen a “short amount of time” to discuss a plea agreement with the prosecution. Our review of the transcript from the providency hearing does not reveal that Judge Hartman put any time pressure on Cohen to reach a plea. Cohen did not request, nor was she denied, additional time. 
16 • Judge Hartman brought in a different judge to advise Cohen on the attempt to influence case but “failed to acknowledge that same bias as he presided over the theft case to enter the plea.” As discussed, Judge Hartman’s recusal from the attempt to influence case did not disqualify him from presiding over the theft case. • Judge Hartman “refused to take action” on Cohen’s motion requesting appointment of an appellate public defender. As the order taking no action on Cohen’s motion reflects, the court determined there was “no issue subject to appeal currently,” which would make sense given that Cohen pleaded guilty. We note that after Cohen filed a notice of appeal, another judge granted her request for counsel. • Judge Hartman recused from the theft case after presiding over Cohen’s guilty plea. In reality, the Chief Judge ordered all judicial officers of the Twentieth Judicial District to recuse from the case. The record does not reveal the reason for recusal. ¶ 31 This record does not “clearly establish bias” by Judge Hartman. See Schupper, ¶ 59. Cohen’s claims are bare assertions 
17 and speculative statements that do not satisfy her burden of proof. See A.P., ¶ 30. Accordingly, we conclude that reversal is not required. See id. at ¶ 29. III. Deprivation of Counsel ¶ 32 Cohen contends that the district court erroneously and totally deprived her of her right to counsel, causing her guilty plea to be unknowing and unintelligent. We conclude that Cohen waived her right to object to the alleged deprivation of counsel by pleading guilty. And what remains of her claim — a collateral attack on the validity of the plea — cannot be addressed on direct appeal because it requires further factual development. A. Cohen Waived Her Claim that She Was Denied Counsel ¶ 33 The Sixth Amendment to the United States Constitution guarantees a defendant the right to counsel. U.S. Const. amend. VI; see also Colo. Const. art. II, § 16; Faretta v. California, 422 U.S.
806, 832 (1975). The “complete deprivation of counsel” has been recognized as a structural error requiring automatic reversal. Hagos v. People, 2012 CO 63, ¶ 10; People v. Crabtree, 2024 CO 40M, ¶ 26. 
18 ¶ 34 But even structural errors may be waived. Stackhouse, ¶ 8. Waiver is “the intentional relinquishment of a known right or privilege.” People v. Rediger, 2018 CO 32, ¶ 39 (quoting Dep’t of Health v. Donahue, 690 P.2d 243, 247 (Colo. 1984)). ¶ 35 “[A] guilty plea waives fundamental Sixth Amendment rights, among others, unless the claim relates directly to the adequacy of the guilty plea (i.e., whether it was knowing, voluntary, and intelligent).” Jennings, ¶ 13. This is because “[a] guilty plea is an admission of all the elements of a criminal charge,” and “[g]enerally . . . precludes review of issues that arose prior to the plea.” Neuhaus, ¶ 8. “[A] ‘guilty plea represents a break in the chain of events which has preceded it in the criminal process,’ after which a defendant may not raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea.” Jennings, ¶ 8 (quoting Neuhaus, ¶ 8); Tollett v. Henderson, 411 U.S. 258, 266-67 (1973). ¶ 36 By pleading guilty, Cohen waived her right to object to any errors — including those of constitutional magnitude — that may have occurred before the plea. See Stackhouse, ¶ 8; Neuhaus, ¶ 8. Thus, Cohen waived any claim that she was erroneously and totally 
19 deprived of counsel before she entered her guilty plea, and we will not address the merits of that claim. See Rediger, ¶ 40 (“[W]aiver extinguishes error, and therefore appellate review.”). B. Cohen’s Claim that her Plea Was Not Knowing or Intelligent Cannot Be Raised on Direct Appeal ¶ 37 Cohen contends that she did not understand the consequences of pleading guilty because the district court erroneously denied her counsel earlier in the proceedings. More particularly, Cohen contends that she would not have entered into the plea agreement had she known that it (1) would waive her right to raise an appellate claim that her speedy trial right was violated or (2) did not guarantee a global disposition would be reached in both of her criminal cases. ¶ 38 Because this aspect of Cohen’s claim relates directly to the adequacy of her guilty plea, she did not waive it by pleading guilty. See Jennings, ¶ 13. Still, Cohen’s claim is not cognizable on direct appeal because it requires development of a factual record. See Kirk, 221 P.3d at 65; cf. Moore, ¶¶ 16-17. ¶ 39 Entry of a guilty plea must be knowing, voluntary, and intelligent. Medina v. People, 2023 CO 46, ¶ 17. A plea is invalid if 
20 a defendant “does not understand the nature of the constitutional protections” they are waiving or “has such an incomplete understanding of the charge” that the plea cannot stand “as an intelligent admission of guilt.” Id. (citation omitted). ¶ 40 Whether a guilty plea is knowing, voluntary, and intelligent is a mixed question of fact and law. Sanchez-Martinez v. People, 250 P.3d 1248, 1254 (Colo. 2011). While we are well-positioned to review purely legal issues on direct appeal, a defendant’s claim that their plea was not knowing, voluntary, or intelligent may require development of facts not contained in the direct appeal record. Cf. Moore, ¶ 17 (postconviction review is necessary to develop facts not contained in the direct appeal record that impact whether waiver of right to testify was knowing, voluntary, and intelligent). Such is the case here. ¶ 41 Even if we assumed that the district court erroneously deprived Cohen of counsel earlier in the proceedings, a conclusion we do not reach, we cannot discern from the existing record whether the error influenced Cohen’s decision to plead guilty. The existing record does not establish whether advice of counsel would have changed what Cohen believed about a global disposition of the 
21 theft and attempt to influence cases
3 or about her right to bring a speedy trial claim on appeal. A postconviction court could find that the absence or presence of counsel would have had no effect on whether Cohen knowingly or intelligently pleaded guilty. For example, a postconviction court could find that Cohen was fully aware of the limited scope of her plea and of the impact that pleading guilty would have on her ability to pursue an appellate claim that her speedy trial rights had been violated. We cannot make those factual findings in the first instance. See Kirk, 221 P.3d at 65 (“We are not authorized to make [a] factual finding in the first instance . . . and this is not a case in which the record supports but one inference.”) (citation omitted). ¶ 42 Because we cannot discern the facts necessary to resolve Cohen’s claim on the record before us, we will not address it for the first time on direct appeal. See id. (declining to address for the first time on appeal whether a defendant was coerced into a guilty plea 3 To be sure, we are skeptical of this claim, given that Judge Langer made clear to Cohen — after he advised her in the attempt to influence case but before she entered her guilty plea in the theft case — that “there’s no guarantee that there’s a disposition in both cases.” 
22 where the record needed further factual development); cf. Moore, ¶¶ 16-17 (same with respect to the waiver of the right to testify). Instead, Cohen must present this claim in a Crim. P. 35(c) postconviction motion. See Kirk, 221 P.3d at 65.
4 IV. Disposition ¶ 43 We affirm the judgment of conviction. JUDGE HARRIS and JUDGE LUM concur. 4 As a result of our disposition, we necessarily discharge the show cause order entered February 14, 2024.